BLOODSTOCK SERVICES IRELAND, LIMITED, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 79–78.

United States District Court, E. D. Kentucky, Lexington Division.

Sept. 18, 1980.

Catesby Woodford, Lexington, Ky., for plaintiff.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., Leonard E. Lombardi, White Plains, N. Y., C. Dant Kearns, Louisville, Ky., Walter C. Cox, Jr., Gordon R. Moss, Weldon Shouse, Charles E. Shivel, Jr., Lexington, Ky., for defendants.

## MEMORANDUM OPINION

SCOTT REED, District Judge.

This is an action based on an alleged breach of contract between the plaintiff, Bloodstock Services Ireland, Inc., and the defendants, Mersant International Ltd., Pegasus Air Transport Co., and Murty Brothers Agency, Inc., who contracted with the plaintiff for the exportation of twenty–nine (29) horses from Kentucky to Ireland. The plaintiff alleges that these defendants contracted with defendant, Bonnie Brae Farms, Inc. and defendant, William Lockridge, for the use of Bonnie Brae Farm No. 2 as a holding area for the twenty–nine (29) horses prior to their transport from the United States to Ireland.

According to the plaintiff this farm had not been inspected by a Federal Veterinarian Inspector, and therefore should not have been approved as an export facility for horses. Allegedly, Dr. Gerald Sheridan, a veterinarian employed by the United States Department of Agriculture, approved this farm as an export facility over the telephone without personally inspecting the farm as required by federal regulations. On the day before the horses were scheduled for shipment, a private veterinarian attending some of the horses realized that Bonnie Brae Farm II had been the location of an outbreak of an equine disease designated "strangles" about one month previously. This caused the private veterinarians attending the horses to withdraw their approval for the shipment of the horses and consequently the shipment was cancelled.

The plaintiff alleges that as a result of the revocation of approval for the exportation of the horses, the horses were quarantined for a period of thirty (30) days and the aircraft chartered by the plaintiff was forced to fly to Ireland without the twenty–nine (29) horses. As a result of the alleged acts of the defendants the plaintiff claims damages of $74,912.97.

Presently before the Court is plaintiff's "Motion to Compel Discovery" in which it seeks to discover two memoranda in the possession of the defendant, United States

Government. The government has tendered the documents to the Court for its inspection, *in camera*, and has provided the plaintiff with the following description of the documents:

(1) A memorandum dated October 17, 1977, prepared by Gerald Sheridan for his superior, J. B. Anderson, Area Veterinarian in Charge, through P. W. Winner, District Veterinarian in Charge, relating to circumstances surrounding the cancellation of the horse exportation scheduled for October 11–12, 1977.

(2) A memorandum dated October 31, 1977, from J. B. Anderson, Area Veterinarian in Charge, to P. W. Winner, District Veterinarian in Charge, Kentucky, relating to a discussion of the October 11–12, shipment and of suggested remedial measures.

In its "Memorandum of Law in Opposition to Motion to Compel Discovery," the government contends that the memorandum dated October 17, 1977, is not discoverable because it was prepared in anticipation of litigation and the memorandum dated October 31, 1977, falls within the privilege accorded subsequent remedial measures. The government has also filed an affidavit by J. B. Anderson, Area Veterinarian in Charge, wherein he states: "The purpose of my soliciting the memorandum [from Dr. Gerald Sheridan] was my concern for the potential liability of the United States and the likelihood that the respective horse owners and/or import/export agents would bring legal proceedings based upon the cancellation of the proposed flight."

The plaintiff argues that the documents in question were prepared immediately following the disputed event and without consultation with attorneys or the commencement of litigation and therefore were not prepared in "anticipation of litigation." F.R.Civ.P. 26(b)(3). Even if they could be considered as prepared in anticipation of litigation the plaintiff claims that it has substantial need of the documents in the preparation of its case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means and is therefore entitled, under F.R. Civ.P. 26(b)(3), to their production. Finally, the plaintiff responds that the claim that the document is evidence of subsequent remedial measures and therefore inadmissible at trial does not obviate the government's obligation to disclose its contents under Fed.R.Evid. 407. We, therefore, consider first the question of whether the memorandum dated October 17, 1977, was prepared "in anticipation of litigation" and if so, whether the plaintiff may still discover its contents in accordance with F.R.Civ.P. 26(b)(3).

Rule 26(b)(3) provides that, "a party may obtain discovery of documents and tangible things otherwise discoverable under (b)(1) of this rule and prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

The test of whether a document has been prepared in anticipation of litigation has been succinctly stated by Professors Wright and Miller:

Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document, and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

8 Wright & Miller, *Federal Practice and Procedure* : Civil Section 2024, at 198 (1970) (footnote omitted).

According to this test the memorandum dated October 17, 1977, was prepared in anticipation of litigation since, accepting the affidavit of J. B. Anderson as true, he solicited the statement from Dr. Gerald Sheridan because of the "potential liability of the United States" and the likelihood of legal proceedings arising from the cancellation of the shipment. The Court, however, is not foreclosed from evaluating the factu-

al circumstances which gave rise to the memorandum simply because the affidavit of an interested party states that it was solicited in anticipation of litigation. Rather than accept the result that any document would be protected because of the mere prospect of litigation we think that the following is a better test and is adopted by the Court:

> [T]he probability that some particular litigation will occur must be substantial before a document may be deemed to be 'in anticipation of litigation.' . . . Therefore the mere fact that a particular action or a particular patent has a likelihood of bringing about litigation at some time in the future is not a sufficient showing. The probability must be substantial and the commencement of litigation must be imminent. Phrased another way, some particular litigation must be contemplated at the time the document is prepared.

*Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127, 130 (D.S.C.1973) (citations omitted).

■ In the present case the memorandum of October 17, 1977, by Dr. Gerald Sheridan was prepared within a week of the events of October 11–12, 1977 which gave rise to this action. No claim had been filed nor had any litigation begun. The memorandum had been prepared merely because of the "potential liability of the United States." In *Spaulding v. Denton*, 68 F.R.D. 342 (D.Del.1975) the Court held that the January 10 and January 21, 1972 reports of a marine surveyor's firm which was hired by a yacht owner's insurer in an attempt to find out everything possible, as soon as possible, after the December 19, 1971 sinking of the yacht, were not prepared "in anticipation of litigation" and thus were freely discoverable under F.R.Civ.P. 26(b)(3). The insurer of the yacht knew there would be some claim, but until more was known about the accident, litigation was only a possibility. In the present case, there was no particular litigation contemplated at the time the memorandum was written. Therefore, the memorandum of Dr. Gerald Sheridan was not prepared "in anticipation of litigation" within the meaning of Rule 26(b)(3). Accordingly, the Court will grant the defendants' motion to compel discovery of the October 17, 1977 memorandum.

■ The second question is whether the memorandum dated October 31, 1977, from J. B. Anderson to P. W. Winner must also be disclosed to the plaintiff. It is the position of the government that the memorandum contains matters covering remedial measures; therefore, the government should be afforded the benefit of the public policy that encourages such remedial measures without the threat of discovery and subsequent use at trial. Conversely, the plaintiff argues that even if evidence of subsequent remedial measures is inadmissible at trial it is still discoverable.

It is the opinion of the Court that the subject matter of the second memorandum, viewed in the light most favorable to the government, does not disclose evidence of subsequent remedial measures. The memorandum does not direct the veterinarians in the employ of the United States Department of Agriculture to implement new or different measures for the protection of horses being exported. All it states is that the veterinarians should follow the regulations which were in force when the incident occurred.

The Court finds that the memorandum of October 31, 1977 does not contain evidence of subsequent remedial measures, therefore the plaintiff's motion to compel discovery as to that document is GRANTED.