**SCOTT PAPER COMPANY, Plaintiff,**

v.

**The CEILCOTE COMPANY, INC. and H.W. Case Sales, Inc., Defendants.**

**Civ. No. 83–0192 P.**

United States District Court,
D. Maine.

Nov. 27, 1984.

Gordon F. Grimes, Peter J. Rubin, Bernstein, Shur, Sawyer & Nelson, Portland, Me., Stephen D. Ford, Group Counsel—Scott Paper Co., Philadelphia, Pa., for plaintiff.

John H. King, Jr., Peter J. DeTroy, III, Norman & Hanson, Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

### I.

This case is before the Court upon Plaintiff's Motion to Compel Production of Documents. Plaintiff Scott Paper Company initiated this suit for damages arising from the alleged failure of fiberglass reinforced plastic pipes, flanges and nozzles manufactured and sold by Defendant The Ceilcote Company, Inc. and distributed by Defendant H.W. Case Sales, Inc. Plaintiff claims damages for breach of warranty, negligence and strict liability.

Plaintiff seeks to compel production of nine documents listed in Inventory of Documents for Which Privilege is Claimed, filed in this Court November 2, 1984. The documents have been produced for the Court's *in camera* review. Six of the documents are memoranda prepared by William Case, head of Defendant H.W. Case Sales, Inc., and addressed to various personnel of Defendant The Ceilcote Company, Inc. Each contains the remarks of Mr. Case regarding a meeting had with employees of Plaintiff regarding the alleged failure of pipe flanges manufactured by Ceilcote. Each is a standard form of the H.W. Case Sales, Inc. entitled "REPORT OF CALL." The other three documents are titled, in part, "INTER–OFFICE CORRESPONDENCE" of The Ceilcote Company. One of these was from J.R. Cummings, a Ceilcote employee, to S.V. Sheappard, President of Ceilcote. Another is from Cummings to Frank Simone, "in-house" counsel for General Signal Corporation, the parent corporation of Ceilcote. The third is from "Case Sales" to Cummings.

Defendants contend that eight of the documents constitute "work product" and thus are protected from discovery because Plaintiff has not made the showing of substantial need and undue hardship required by Fed.R.Civ.P. 26(b)(3). Defendants argue that the remaining document, from Cummings to Simone, is protected by the attorney-client privilege. *See* Fed.R.Civ.P. 26(b)(1); Me. Rules of Evid. 502.

Rule 26(b)(3) provides in pertinent part:

(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The leading case on the "work product" doctrine is *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a decision which pre-dated the incorporation of the work product immunity into Rule 26(b) of the Federal Rules of Civil Procedure. In *Hickman*, an attorney for the owners and insurers of a tug boat which had sunk interviewed and obtained statements from witnesses to the accident "with an eye toward the anticipated litigation." *Id.* at 498, 67 S.Ct. at 387. The Court held that the materials were the "work product" of the attorney and were not discoverable absent a showing of substantial need. The Supreme Court made clear that the policy underlying the work product immunity is protection of the integrity of the adversary process:

Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift

what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11, 67 S.Ct. at 393–94.

 It is clear from the Supreme Court's articulation of the policy of the work product immunity that it is the work product of the *attorney* preparing for litigation that requires protection from discovery. *See United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). In a more recent district court case it was stated that:

> *any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), *which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise* must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of the new Rule 26(b)(3) and (b)(4).

*Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 372 (N.D.Ill. 1972) (first emphasis in original; other emphasis added); *see also Universal Vendors, Inc. v. Candimat Co. of America,* 16 F.R.Serv.2d 1329, 1330 (E.D.Pa.1972).

 It is not necessary that a document be prepared by an attorney in order for the immunity to apply. *See* Fed.R. Civ.P. 26(b)(3); *United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (materials prepared by agents of attorney are protected). On the other hand, the protection does not extend to all documents gathered by an attorney in preparation for litigation. *Zucker v. Sable,* 72 F.R.D. 1, 3 (S.D.N.Y. 1975). The mere fact that an attorney *located* a particular document while preparing for litigation does not make the document "work product." *Id.* The protection is "limited to items obtained or produced by the lawyer which involves [sic] his professional skill and experience." *Id.*

 Rule 26(b)(3) dictates that the focus of any inquiry into whether the work product immunity applies is whether the materials were prepared "in anticipation of litigation." Courts often consider the temporal proximity or the likelihood of litigation as factors in deciding whether a document was prepared "in anticipation of litigation." *See, e.g.,* Stone & Liebman, *Testimonial Privileges,* 158–60 (1983) (cases collected at notes 129–140).

These factors are only an aid to deciding the determinative question of whether the prospect of litigation was the primary reason or motivation for the preparation of the materials. *See* 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970) (test is whether document prepared or obtained because of prospect of litigation); *accord Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977); *Bloodstock Services Ireland, Ltd. v. United States,* 87 F.R.D. 732, 734 (E.D.Ky.1980).

■ If a party is involved in an event that may potentially lead to litigation, all documents which are subsequently prepared with regard to that event are not necessarily immune from discovery. In a recent decision, the District Court for the District of Columbia refused to extend the work product immunity to investigative reports prepared by the defendant subsequent to a fire in one of the defendant's dormitories. *Janicker v. George Washington University,* 94 F.R.D. 648 (D.C.1982). The Court's reasoning is relevant to the determination of this motion:

> The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible in civil pretrial discovery. As stated in *Soeder v. General Dynamics Corporation,* 90 F.R.D. 253 (D.Nev.1980) the distinction between whether defendant's "in house" report was prepared in the ordinary course of business or was "work product" in anticipation of litigation is an important one. 90 F.R.D. at 255. *The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an "in house" report as work product* .... A more or less routine investigation of a possibly resistable claim is not sufficient to immunize an investigative report developed in the ordinary course of business. Some recent cases have suggested the need for objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report before the work product doctrine becomes applicable. *See, e.g., Fine v. Bellefonte Underwriters Insurance Co.,* 91 F.R.D. 420 (S.D.N. Y.1981); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115 (N.D.Ga.1972). While litigation need not be imminent, the *primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation. Cf. In Re International Systems and Controls Corporation Securities Litigation,* 91 F.R.D. 552, 557 (S.D.Texas 1981).

*Id.* at 650 (emphasis added). The Court concluded that the primary motivation for the investigative reports was to prevent the repetition of the tragedy and to protect the University's standing in the community and among potential future students. *Id.*

Other courts have recognized this important but subtle distinction between reports prepared in response to an unfortunate event, that might well lead to litigation, and materials prepared as an *aid* to litigation. *See Binks Manufacturing Company v. National Presto Industries, Inc.,* 709 F.2d 1109 (7th Cir.1983) (memorandum prepared by corporate counsel regarding breach of contract dispute not work product where parties were still attempting to resolve their differences); *Hensel Phelps Construction Co. v. Southwestern Roofing & Sheet Metal Co.,* 29 F.R.Serv.2d 1095 (D.Colo.1980) (documents prepared by plaintiff with regard to allegedly defective roofing materials and workmanship supplied by defendant are discoverable because their primary purpose was to determine "what the problems were and how they could be resolved" and not to prepare for litigation). In *Soeder v. General Dynamics Corporation,* 90 F.R.D. 253 (D.Nev.1980), the Court required the defendant to produce an "in-house" accident report defendant prepared following the crash of one of its aircraft. The Court explained:

> The fact that Defendant anticipates the contingency of litigation following a crash of one of its aircraft does not automatically qualify Defendant's "in-house" report as work product. Certainly litigation is a contingency to be recognized by any aircraft accident. However, given the equally reasonable desire of Defendant to improve its aircraft products, to protect future pilots and passengers of

its aircraft, to guard against adverse publicity in connection with such aircraft crashes, and to promote its own economic interests by improving its prospect for future contracts for the production of said aircraft, it can hardly be said that Defendant's "in-house" report is not prepared in the ordinary course of business.

*Id.* at 255.

■ After carefully reviewing, *in camera*, the documents for which the "work product" immunity is claimed in this case, the Court has determined that all were prepared for a purpose other than preparation for litigation. All the documents discuss the alleged failure of materials manufactured by Defendant Ceilcote and distributed by Defendant H.W. Case. All summarize discussions had with employees of Plaintiff with regard to solutions for the problem. It is clear from their content that the primary concerns of Defendants were, first, to maintain a good relationship with Plaintiff, whom they both regarded as an important customer and, second, to arrive at a commercial settlement by which litigation regarding the problem could be avoided. The authors of the memoranda may have been aware at some point that litigation was a possibility. But nothing in the documents indicates that they were in any sense prepared for litigation or in anticipation of litigation.

In several of the documents, the possibility of litigation is expressly mentioned. In each instance, the document's author expressed the hope that litigation could be avoided. The purpose of these references was clearly to alert the recipient of the demands made by Plaintiff or of the likelihood that Plaintiff would initiate litigation. For example, William Case stated in his "REPORT OF CALL" of July 16, 1980:

At this point there is nothing that can be done other than to respond reasonably quickly with some projected settlement. The piping has been replaced and is in service and the mill is running and tempers are beginning to cool.

There are in collection in Pat Roy's office, all of the failed flanges and I know that we're going to be asked to sit down with them very shortly to explain and offer some restitution. Ted Walls has written an inter office note that he feels that we ought to give them back the money they paid for this system. I don't know whether we have to go all that way, but we certainly have to do some and hopefully we can avert litigation and all the mess that would entail.

Clearly, the purpose of these remarks is to report to the manufacturer, Defendant Ceilcote, upon the status of the customer's position with respect to the alleged failure of a product distributed by the author's company, Defendant H.W. Case Sales, Inc. The term "settlement" in this context refers to a negotiated business settlement and not to the settlement of a legal action. The primary motivation for the creation of this document was not to prepare for litigation, but to report upon a business meeting and to explore means of preventing a fledgling business dispute from leading to legal action. It was not prepared *"because of the prospect of litigation." See Binks Manufacturing Company v. National Presto Industries, Inc.,* 709 F.2d 1109, 1120 (7th Cir.1983); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977).

The same analysis applies to a subsequent memorandum from J.R. Cummings to S.V. Sheappard, President of Ceilcote, dated July 31, 1980. The memorandum reported on a meeting between Cummings, Case, a Jim Blue and representatives of S.D. Warren "to discuss the failure of our Vanstone flanges supplied on the subject purchase order." The details regarding the alleged failures were discussed, and negotiations regarding the possibility of a settlement took place. The concluding paragraph stated:

After the meeting, Jim Blue, Bill Case and I discussed our meeting on the way to the airport. Bill's feeling is that, al-

though Bill Vanvoorhes came on very strong and seemed to take charge of the meeting, that the final decision would lie with Jack Reynolds, Manager of Purchasing. Bill thinks that Reynolds may be willing to consider some kind of settlement, and Bill will make some unofficial contacts to see if there are any doors open in this regard. I cautioned Bill not to attempt to make any offers, but simply explore the question of whether a solution short of litigation was possible. This he agreed to do. We all concluded that the next move will probably be up to S.D. Warren, although if we get some signals that a settlement is possible, we may want to consider same. Bill will contact us no later than early next week with any new information he may have.

Obviously, Cummings was aware of the possibility of future litigation. Once again, however, the document itself was in no sense preparatory for such litigation. Rather, it summarizes negotiations and reports reactions thereto. The primary motivating purpose behind the report was not to aid in possible litigation, *see Janicker*, 94 F.R.D. at 650; *Binks*, 709 F.2d at 1119, but to foster a commercial disposition of the controversy that would obviate any need for litigation. Although the likelihood of litigation may have increased after this meeting, it is apparent from the document that the author was reporting his and others' perceptions of the opposing party's position rather than purposefully producing materials that would aid in impending litigation. Therefore, the document is not "work product" and is not protected from discovery under Rule 26(b)(3).

It is unnecessary to discuss the other documents in detail. It is sufficient for the Court to state its finding that none were prepared "in anticipation of litigation" within the meaning of Rule 26(b)(3). They are merely historical records of a series of meetings whose primary objective was a nonjudicial *business* settlement. The fact that the negotiations ultimately failed and litigation was commenced does not cloak the materials with the work product immunity. *See Binks*, 709 F.2d at 1118.

## II.

■ Defendant claims that a letter from Cummings to Frank Simone, "in-house" counsel for General Signal Corporation, the parent corporation of Defendant Ceilcote, is protected by the attorney-client privilege. In this diversity action, in which Maine State law supplies the rule of decision, the privilege of a party is to be determined in accordance with Maine law. Fed.R.Evid. 501. Me.R.Evid. 502(b) provides in pertinent part:

(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative....

■ The subject letter was written by a "representative" of the client, *see* Me.R. Evid. 502(a)(2), it contained information regarding the subject matter of this litigation, and it requested advice from the attorney. It is protected, therefore, by the attorney-client privilege and is not subject to discovery under Fed.R.Civ.P. 26(b)(1).

## III.

■ Plaintiff has requested an award of expenses incurred in obtaining this Order pursuant to Fed.R.Civ.P. 37(a)(4), which provides in pertinent part:

(4) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order,

including attorney's fees, *unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.*

(Emphasis added.) The "work product" doctrine is not free from difficulty; courts have developed many different formulations of the test to be applied when the immunity is asserted. This Court has found no definitive statement of a test to be applied in this Circuit. Under the current state of the law, Defendant's opposition to the motion was hardly frivolous. Accordingly, the Court finds that Defendant's opposition to Plaintiff's Motion to Compel Production of Documents was "substantially justified" and Plaintiff's request for expenses will be denied.

It is ORDERED that:

(1) Plaintiff's Motion to Compel Production of Documents be, and is hereby, GRANTED as to documents 1, 2, 3, 4, 6, 7, 8 and 9, as listed in the Inventory of Documents for Which Privilege is Claimed, filed in this Court on November 2, 1984, and said documents shall forthwith be produced for Plaintiff's use;

(2) Plaintiff's Motion to Compel Production of Documents be, and is hereby, DENIED as to document 5 in the above-entitled inventory; and

(3) Plaintiff's request for reasonable expenses incurred in obtaining this Order be, and is hereby, DENIED.

So ORDERED.