Ruby MYLES

v.

WOMEN AND INFANTS HOSPITAL
OF RHODE ISLAND.

No. 83–278–Appeal.

Supreme Court of Rhode Island.

Jan. 23, 1986.

Martin S. Malinou, Providence, for plaintiff.

Dennis J. McCarten, Hanson Curran & Parks, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal from a Superior Court medical malpractice action in which the jury returned a verdict for the defendant. The trial justice denied the plaintiff's motions for a new trial and to reopen discovery and extend time for a new trial. The plaintiff contends several errors were committed by the trial justice. In considering the plaintiff's appeal, we shall discuss only those issues that merit attention.

On April 27, 1976, plaintiff, who was then aged twenty-six, went to defendant's ambulatory clinic seeking an elective sterilization. In accordance with clinic procedure, she met with a social worker and discussed the permanency of a tubal ligation.[1]

The plaintiff was then given a preliminary examination by Dr. Edward Buonopane,[2] a resident in obstetrics and gynecology. Doctor Buonopane informed plaintiff that she was a candidate for a vaginal tubal ligation. He gave a nurse three consent forms that were to be signed by plaintiff. After reading the forms and questioning the nurse for about ten minutes concerning some of the side effects listed on the "Request for Sterilization" form, she then signed the forms. On May 11, 1976, Dr. Eugene Giovanni, assisted by Dr. Buonopane, performed a bilateral vaginal tubal ligation on plaintiff.

On November 10, 1977, plaintiff was informed by her "private" doctor, Dr. John J. Coughlin, that she was pregnant. She gave birth to a healthy boy in June of 1977. Following the son's birth, Dr. Coughlin performed a second tubal ligation on plaintiff.

■ The only issue presented at trial was whether the hospital, through its employees,[3] negligently failed to obtain plaintiff's informed consent prior to the May 1976 tubal-ligation surgery.

The plaintiff testified that she was not advised by hospital personnel that a properly performed tubal ligation might fail to result in permanent sterility. She insisted that had she been advised of the risk of postoperative conception, she would not have consented to the surgery. However, she conceded that her signature appeared on the consent form, that stated, "It has been explained to me that this operation is intended to result in sterility although this result has not been guaranteed."

In testifying by way of deposition, Dr. Buonopane indicated he did not recall his interview with and physical examination of plaintiff. However, the doctor was certain, from his entry in the medical chart at the hospital, that he had given the standard speech he developed for tubal-ligation patients to plaintiff. This three- to five-minute speech included the following warning concerning the failure rate: "[T]he tubal ligation itself is not a hundred percent effective and you can still get pregnant. And the pregnancy rate is about one to 200 to one to 300, okay depending on who you read."

Doctor Coughlin, who performed the second tubal ligation on plaintiff, testified that both tubes showed evidence of previous

1. In this procedure, the Fallopian tubes, which connect and relay eggs from the ovaries to the uterus, are surgically cut and tied. *See Taber's Cyclopedic Medical Dictionary,* F 4–5, L 36, T 77 (13th ed. 1977).

2. The plaintiff testified that the doctor who examined her on April 27, 1976, introduced himself as Dr. Adamson. Hospital records indicate that Dr. Buonopane examined her. Negligence in the performance of the surgery was not an issue at trial.

3. The plaintiff's suit is against the hospital because Dr. Buonopane, as a resident physician, is considered to be an agent of the hospital rather than an independent contractor. *Berarducci v. Rhode Island Hospital,* — R.I. —, —, 459 A.2d 963, 964 (1983); *Glavin v. Rhode Island Hospital,* 12 R.I. 411, 423–24 (1879).

tubal ligation. He stated that his naked-eye impression was that there was an area that may have grown through the bottom of the previous incision. It was his opinion that the left tube had recanalized.[4] Doctor Coughlin sent specimens of both tubes to the lab for the pathologist's observations on whether evidence of recanalization existed, but he admitted that he had never obtained proof from pathology to confirm his opinion.

During the discovery state of this litigation, plaintiff made a motion to compel production of a taped statement Dr. Buonopane had given to a representative of the hospital's insurance company shortly after the complaint was filed. The motion was denied on the grounds that the document sought constituted work product under Rule 26 of the Superior Court Rules of Civil Procedure.

At trial plaintiff sought to admit into evidence the portion of Dr. Buonopane's deposition in which he referred to his taped conversation with the insurer's investigator. The taped interview occurred shortly after plaintiff had instituted this suit. Just prior to closing argument she sought the trial justice's permission to comment during argument on the hospital's refusal to produce the taped interview. This request was based upon the so-called empty-chair doctrine.[5] The trial justice denied both requests, stating that the existence of the tape was not relevant evidence.

██ Notwithstanding plaintiff's ingenious protestations to the contrary, the trial justice's rejection of her efforts to bring to the jury's attention the taped interview was correct because the work-product doctrine as embodied in Rule 26 bars any use or reference to the report. *See generally Fireman's Fund Insurance Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84 (1978) (for an explanation of the work-product doctrine).

██ The plaintiff also claims that the trial justice abused his discretion in denying her postjudgment motion to reopen discovery and extend new-trial time in order to depose the hospital pathologist under Super.R.Civ.P. 27(b).[6] She alleges that a discrepancy surfaced at trial between Dr. Coughlin's testimony and the hospital

---

**4.** Recanalization was defined by Dr. Coughlin as the "growing of two tubes back together again with an opening again appearing between them or perhaps the proliferation of another tube in that area which would transfer the sperm or the egg."

**5.** Under the empty-chair doctrine a trial justice may charge a jury that it may infer from a litigant's unexplained failure to produce an available witness who would be expected to give material testimony in the litigant's behalf that the witness, had he occupied the empty chair, would have testified adversely to the litigant. However, in *Benevides v. Canario,* 111 R.I. 204, 207–08, 301 A.2d 75, 77 (1973), we stressed that this doctrine was to be applied with caution so that as a condition precedent to its invocation, there must be a showing of the missing witness's availability to the person who would be expected to produce the witness, and in a jury case the person seeking to gain the benefits of the unfavorable inference must make it known to his or her adversary that a request for such a charge is going to be made of the trial justice.

**6.** Rule 27(b) of the Superior Court Rules of Civil Procedure provides:

"27. Depositions before action or pending appeal.—

\*   \*   \*   \*   \*   \*

(b) Pending Appeal. If an appeal has been taken from a judgment of this court or before the taking of an appeal if the time therefor has not expired, the court may allow the taking of depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in this court. In such case the party who desires to perpetuate the testimony may make a motion in this court for leave to take the depositions, upon the same notice and service thereof as if the action was pending in this court. The motion shall show (1) the names and addresses of persons to be examined and the substance of the testimony which he expects to elicit from each; (2) the reasons for perpetuating their testimony. If the court finds that the perpetuation of the testimony is proper to avoid failure or delay of justice, it may make an order allowing the depositions to be taken and may make orders of the character provided for by Rules 34 and 35, and thereupon the depositions may be taken and used in the same manner and under the same conditions as are prescribed in these rules for depositions taken in actions pending in this court."

records, which suggests that the surgeon who performed the first tubal ligation may have been negligent. The plaintiff asserts that she should have been permitted to depose the hospital pathologist in order to ascertain whether there was negligence in the performance of the surgery.

The trial justice pointed out that plaintiff was seeking to invoke Rule 27(b) for a purpose for which it was not designed. He stated that the purpose of the rule is to preserve and perpetuate testimony pending appeal for future use and that it was not designed to permit a plaintiff to obtain new evidence that would then serve as a basis for a second malpractice suit. Furthermore, the trial justice found that denial of the motion would not defeat the interests of justice because the lack of a finding in the pathology report concerning recanalization was a speculative and an insufficient reason to warrant an extension of time for plaintiff to depose the pathologist. We agree.

Although this court has not yet interpreted Rule 27, the plain language of the rule authorizes a trial justice to permit a deposition to be taken, pending appeal, only if the court determines that it is necessary to (1) perpetuate testimony for use in the event of further proceedings and (2) avoid the failure or delay of justice.

Rule 27(b) is patterned on the same Federal Rule of Procedure. Federal courts permit the invocation of the rule only in special circumstances where it is necessary to preserve testimony and require the moving party to show why the evidence is likely to be lost. *Ash v. Cort*, 512 F.2d 909, 913 (3d Cir.1975). If the court finds the perpetuation of testimony is necessary to avoid the failure or delay of justice, it may allow the deposition to be taken. 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2076 at 344 (1970).

Here, plaintiff did not even attempt to suggest that the perpetuation of the pathologist's testimony was necessary to avoid the failure or delay of justice. Her reliance on Rule 27(b) was motivated by a desire to uncover evidence that would serve as the basis for the institution of a civil action against someone other than the resident. Rule 27 cannot be converted into a fishing license that would enable plaintiff to go on an excursion in which she could abandon her claim against the hospital and go off in pursuit of other targets. 8 Wright & Miller, § 2071 at 332–33.

■ The plaintiff's final claim of error is that the trial justice overlooked and misconceived evidence when he denied her motion for a new trial. She asserts that Dr. Buonopane's short recitation of the failure rate was not calculated to inform her, as a twenty-six-year-old high school graduate, of the risk of pregnancy.

The trial justice reviewed the material evidence and independently assessed the credibility of the witnesses. He noted that plaintiff (1) had read and signed a consent form stating that sterility was not guaranteed, (2) had discussed the procedure with friends and a hospital social worker, and (3) was given ample opportunities to ask questions concerning the procedure. The trial justice determined that despite the brevity of Dr. Buonopane's remarks, the plain language he used conveyed that there was a risk of pregnancy subsequent to a properly performed tubal ligation. Based upon the above-noted reasons, the trial justice was of the belief that plaintiff was an intelligent woman and that she understood the risks involved before consenting to the procedure.

It is clear from an examination of the record that the trial justice did not overlook or misconstrue material evidence. Nor was he otherwise clearly wrong in determining from the evidence presented that reasonable persons could reach different results in deciding the outcome of this case. Thus, the trial justice properly denied the plaintiff's new-trial motion. *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, — R.I. —, —, 474 A.2d 436, 444–45 (1984).

Therefore, the plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.