David CABRAL

v.

Joseph F. ARRUDA, Alias.

John F. BIGBEE

v.

Louis A. FUCHS, M.D., et al.

Nos. 87–528–M.P., 88–355–M.P.

Supreme Court of Rhode Island.

April 3, 1989.

Thomas Santamaria, Elizabeth A. DelPadre, J. Robert Weisberger, John P. Barylick, Wistow & Barylick, Providence, for plaintiff.

Madeline Quirk, Higgins, Cavanagh & Cooney, David W. Carroll, Roberts, Carroll, Feldstein & Tucker, John F. Dolan, Rice, Dolan & Kershaw, Providence, for defendant.

## OPINION

MURRAY, Justice.

The case now under consideration is a consolidation of two cases, *David Cabral v. Joseph F. Arruda, Alias,* and *John F. Bigbee v. Louis A. Fuchs, M.D., et al.* Both cases are before us on writs of certiorari.

The facts of the two cases present an identical issue. In regard to the first case, David Cabral was the driver of a car that had stopped at a red light. Another automobile, driven by defendant, allegedly came from behind and ran into the rear of Cabral's car. The plaintiff Cabral filed suit claiming that the accident was due to defendant's negligence and caused Cabral physical injury and other damages. Unbeknownst to Cabral, defendant's attorneys hired an investigator to monitor and photograph his activities. Cabral made a discovery request for all photographs taken of him by defendant, and the date, time, and place taken. The trial justice granted plaintiff's motion to compel production.

In regard to the second case, John F. Bigbee sought treatment for his infected right leg. Doctor Louis A. Fuchs operated on Bigbee's leg. Bigbee asserts that Fuchs provided negligent medical treatment, and that such treatment caused him physical injury and other damages. The plaintiff Bigbee learned that on at least one occasion an investigator, Creative Services,

Inc., was hired to take surveillance photographs of him. The plaintiff made a motion to compel production of such photographs. The motion was denied.

The issue presented is when, if at all, are surveillance materials discoverable, and if they are discoverable, what requirements accompany discoverability. Our discussion begins with an overview of discovery principles and the work-product doctrine, and then turns to surveillance materials in particular.

## I

## OVERVIEW

The philosophy underlying modern discovery is that prior to trial, all data relevant to the pending controversy should be disclosed unless the data is privileged. 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2001 at 15 (1970). The rationale for such disclosure is that controversies should be decided on their merits rather than upon tactical strategies. *Id.* at 14. However, special discovery rules apply in cases of trial-preparation materials. The landmark case on this topic is *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

In *Hickman,* the issue was the discoverability of material prepared by an attorney in anticipation of litigation. *Id.* at 497, 67 S.Ct. at 387, 91 L.Ed. at 455. The Court noted that under Rule 26 of the Federal Rules of Civil Procedure, information that is relevant and nonprivileged is subject to discovery. *Id.* at 508, 67 S.Ct. at 392, 91 L.Ed. at 461. However, the Court also noted that discovery has necessary boundaries akin to all procedural matters. *Id.* at 507, 67 S.Ct. at 392, 91 L.Ed. at 460. The Court held that trial preparation material is the "work product of the lawyer" and that such "work product" is qualifiedly immune from discovery. *Id.* at 511, 67 S.Ct. at 393–94, 91 L.Ed. at 462. One of the purposes of this immunity is to prevent an attorney from "freeloading" on his or her adversary's work. *See id.* at 516, 67 S.Ct. at 396, 91 L.Ed. at 465 (Jackson, J., concurring). The Court also held, however, that

sometimes attorney work product would be discoverable when relevant and nonprivileged facts are not available elsewhere. *Id.* at 511, 67 S.Ct. at 394, 91 L.Ed. at 462.

 *Hickman's* work-product doctrine was later expanded and formalized into Rule 26(b)(3) of the Federal Rules of Civil Procedure in 1970. *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 751 n.2, 391 A.2d 84, 88–89 n.2 (1978); 8 Wright & Miller, § 2023 at 190–91. Despite slight differences, Rule 26(b)(3) of the Federal Rules of Civil Procedure corresponds to Rule 26(b)(2) of Rhode Island's Superior Court Rules of Civil Procedure. *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. at 751, 391 A.2d at 88. For cases heard in Superior Court, Rule 26(b)(2) defines what items may be classified as work product. Rule 26(b)(2) provides:

> "A party shall not require a deponent to produce or submit for inspection any *writing* obtained or prepared by the adverse party, his attorney * * * in anticipation of litigation * * * unless * * * a denial of production or inspection will result in an injustice or undue hardship * * *." (Emphasis added.)

The term "writing" has been interpreted to include such matters as taped statements. *See Myles v. Women and Infants Hospital of Rhode Island,* 504 A.2d 452, 454 (R.I. 1986). To define further the term "writing," we shall seek guidance in the precedents of the federal courts, since the Superior Court rules were closely patterned on the federal rules. *Smith v. Johns–Manville Corp.,* 489 A.2d 336, 339 (R.I.1985); *Nocera v. Lembo,* 111 R.I. 17, 20, 298 A.2d 800, 803 (1973). We hold that the term "writing" encompasses documents and tangible materials. This definition of "writing" under Superior Court Rule 26(b)(2) makes its scope comport with the scope of its federal counterpart. *See Galambus v. Consolidated Freightways Corp.,* 64 F.R.D. 468, 471 (N.D. Ind.1974); 8 Wright & Miller, § 2023 at 192, § 2024 at 197. Photographs and films are tangible materials and are within the scope of Rule 26(b)(2).

## II

## SURVEILLANCE MATERIAL

The discoverability of surveillance photographs, films, or other surveillance material is a case of first impression. We approach the topic mindful of our commitment to the philosophy of modern discovery. A threshold question is whether surveillance materials are work product under Rule 26(b)(2).

 In order to determine whether an item is work product under Rule 26(b)(2), the test is whether, in light of the nature of the document or tangible material and the facts of the case, the document can be said to have been prepared or obtained because of the prospect of litigation, by or for an adverse party or its agent. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 40–41 (S.D.N.Y 1984); *Galambus v. Consolidated Freightways Corp.,* 64 F.R.D. at 472; 8 Wright & Miller, § 2024 at 196–97.

 In the present cases, surveillance photographs are tangible materials. The purpose of such photographs must be considered to determine whether they are prepared or obtained because of the prospect of litigation. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur,* 105 F.R.D. at 41. Possible purposes of surveillance photographs may be to aid an attorney in understanding the adversary's injury because of a possible lawsuit, to impeach the plaintiff's version of his or her injuries at trial, or to offer the surveillance photographs as substantive evidence. In all three instances, surveillance photographs are made precisely in anticipation of litigation. They also are made by an adverse party or its agent. In cases in which surveillance photographs fit the above-enunciated description, they are work product under Rule 26(b)(2) and qualifiedly immune from discovery.

 As surveillance material is work product, it is qualifiedly immune from discovery. However, "qualifiedly immune" means that such material is discoverable with a showing of injustice or undue hard-

ship. *Fireman's Fund Ins. Co. v. McAlpine*, 120 R.I. at 754–55, 391 A.2d at 90; *Town of North Kingstown v. Ashley*, 118 R.I. 505, 509–10, 374 A.2d 1033, 1036 (1977). We now turn to the question of what will constitute a showing of injustice or undue hardship regarding surveillance photographs or films.

■ The introduction of surveillance photographs and films at trial presents the problem of possible exaggeration, distortion, and even fraud by the defendant. This issue has been considered by other courts in regard to surveillance materials. *See Snead v. American ExportIsbrandtsen Lines Inc.*, 59 F.R.D. 148, 150 (E.D.Pa. 1973); *Dodson v. Persell*, 390 So.2d 704, 706 (Fla.1980); *Jenkins v. Rainner*, 69 N.J. 50, 57, 350 A.2d 473, 477 (1976). One court has noted:

> "[T]he camera may be an instrument of deception. * * * Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. * * * Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false."

*Snead*, 59 F.R.D. at 150.
In personal injury trials, the presentation of surveillance materials places at issue whether and to what extent the plaintiff was injured. As the existence and extent of injury is the very essence of plaintiff's claim, surveillance materials need to be scrutinized carefully. To allow surreptitiously obtained photographs or films to be sprung on a plaintiff at trial creates undue hardship. We hold that where a plaintiff learns that surveillance material is to be introduced at trial, its nondisclosure constitutes a showing of undue hardship under Rule 26(b)(2). Such a showing of undue hardship makes surveillance material discoverable.

Another concern presented by the introduction at trial of surveillance photographs, films, or other surveillance materials is that they may be crucial in exposing an untruthful plaintiff. Surveillance material may reveal possible exaggeration, distortion, or even fraud by the plaintiff with respect to his or her injuries. It is in society's best interest that fabricated claims be exposed. *Forster v. Manchester*, 410 Pa. 192, 197, 189 A.2d 147, 150 (1963). At oral argument, defense counsel asserted that if an untruthful plaintiff is allowed to discover surveillance materials, such plaintiff could tailor his or her testimony to conform to such materials and still exaggerate, distort, or defraud in describing his or her injury. Defense counsel believes that the possibility of such tailoring is sufficient grounds to prevent discovery, and that nondisclosure of surveillance material will make a plaintiff more truthful. *Hikel v. Abousy*, 41 F.R.D. 152, 155 (D. Md.1966). However, this argument is unpersuasive as there are diverse ways of exposing an untruthful plaintiff.

■ The problem of an untruthful plaintiff's tailoring testimony to surveillance material is resolved by preproduction deposition. In many cases defendant will have deposed plaintiff as to his or her injuries before such surveillance materials will have been created and before their contents must be produced. This deposition may be used to impeach post-surveillance-material testimony seeking to tailor an injury to surveillance material. In cases where the plaintiff has not been deposed, we hold that the surveilling party has the right to depose plaintiff before producing the surveillance materials. This approach has been adopted by other courts. *Dodson v. Persell*, 390 So.2d at 708. If depositions or other information regarding the plaintiff's injuries has not yet been obtained, and a discovery request for the production of surveillance materials is made, the surveilling party has the right to depose the party or witness surveilled before being required to produce the surveillance materials.

■ To make the above-enunciated discovery rules work, the existence or nonexistence of surveillance materials will be discoverable. If surveillance materials exist, whether they are to be presented at trial also will be discoverable. However, in circumstances where a lawyer creates or

causes to have created surveillance materials solely for his or her own use, such material is work product and thus qualifiedly immune from discovery. The mere existence of such materials alone does not constitute a showing of undue hardship to overcome qualified immunity under Rule 26(b)(2). *See generally Dodson v. Persell,* 390 So.2d 704 (Fla.1980).

Applying the criteria discussed we have examined the instant cases and concluded that:

In the case of *David Cabral v. Joseph F. Arruda, Alias,* the writ of certiorari is granted, the order granting the plaintiff's motion to compel is vacated, and the trial court is instructed to take action consistent with this opinion. The papers are remanded to the Superior Court with our decision endorsed thereon.

In the case of *John F. Bigbee v. Louis A. Fuchs, M.D., et. al.,* the writ of certiorari is granted, the order denying the plaintiff's motion to compel is vacated, and the trial court is instructed to take action consistent with this opinion. The papers are remanded to the Superior Court with our decision endorsed thereon.

WEISBERGER, J., did not participate.