DECISION
Before the Court is defendant, John Campbell's, M.D., Motion for New Trial and plaintiff, Arthur Zalisk's, objection to same. Jurisdiction is pursuant to Super. R. Civ. P. 59.
The jury found defendant negligent and awarded plaintiff $300,000. The defendant filed a Motion for New Trial on the grounds that the jury verdict was not supported by the evidence with respect to the issue of causation and, further, that plaintiff's counsel made an improper comment relative to the empty chair doctrine in closing argument. The plaintiff objects to defendant's Motion for New Trial, arguing that the jury's verdict was amply supported by the evidence and that comments by plaintiff's counsel in closing argument were not improper.
 The Jury Verdict Regarding Causation
In considering defendant's Motion for New Trial in light of this Court's charge to the jury, the trial justice has the duty of exercising her independent judgment of the material evidence in the case, passing on the weight of the evidence, and assessing the credibility of witnesses. Turgeon v. Davis, 120 R.I. 586, 590, 388 A.2d 1172, 1174 (1978) (quoting Barbato v. Epstein,97 R.I. 191, 193, 196 A.2d 836, 837 (1964)). However, "the trial justice need not make an exhaustive analysis of the evidence or state all h[er] conclusions as to the weight of the evidence of the witnesses' credibility, but [s]he should at least refer sufficiently to what motivates [her] to rule as [s]he does so that the reviewing court can determine whether [s]he has overlooked or misconceived material evidence on a controlling issue or is otherwise clearly wrong." Morinville v. Morinville,116 R.I. 507, 511-12, 359 A.2d 48, 51 (1976) (citations omitted).
The defendant argues the jury erred in determining that his negligence was the proximate cause of plaintiff's loss of his kidney, warranting a new trial. The defendant relies on the testimony of three witnesses — Drs. Endreney, Shemin, and Maynard — to support his position.
Although Dr. Endreney did not have any contact with plaintiff, he testified that if plaintiff's kidney had been diagnosed in January 1994 as problematic, it would have had to have been removed. Furthermore, Dr. Endreney testified that, in his opinion, plaintiff's kidney had been non-functioning for at least a year prior to removal. The defendant did not see plaintiff until February 1994, and plaintiff's kidney was removed approximately seven or eight months later. The defendant contends that if one accepts Dr. Endreney's testimony that the kidney was non-functioning for at least a year prior to removal, plaintiff's deteriorating condition predated defendant's interaction with plaintiff. Finally, Dr. Endreney testified that the result would have been the same even if plaintiff had been diagnosed prior to seeing defendant.
Dr. Maynard, the surgeon who removed plaintiff's kidney, testified that it was unlikely plaintiff's kidney could have been saved as of October 1993, four or five months prior to defendant's treatment of plaintiff. Specifically, Dr. Maynard testified that he believed plaintiff's kidney problem represented a "longstanding obstruction that was due to a congenital problem of the urethra in the kidneys." As such, Dr. Maynard asserted that plaintiff's kidney was compromised months prior to the onset of his symptoms and prior to his seeing Campbell.
The defendant contends that plaintiff's experts — Drs. Karoly, Blond, and Wishnow — failed to demonstrate that defendant's negligence caused plaintiff to lose his kidney. The defendant argues that Dr. Karoly did not reference when plaintiff's kidney was actually compromised. Dr. Blond testified that plaintiff's kidney could have been treated at the time he saw defendant. The defendant contends that Dr. Blond's testimony was not credible in that his review of the case was faulty. Dr. Wishnow testified that he could not identify when plaintiff's kidney became irretrievably compromised. Based upon the testimony of all experts, defendant argues that the jury verdict failed to respond to the overwhelming evidence that plaintiff's kidney had been irretrievably compromised prior to plaintiff seeing defendant.
The plaintiff argues that Dr. Blond testified that plaintiff's kidney could have been saved if plaintiff was referred out in February 1994 or if an ultrasound had been performed. Dr. Blond believed that the damage to plaintiff's kidney was the result of a combination of an infection and an obstruction.
The plaintiff asserts that although Dr. Maynard testified that plaintiff's kidney had been irretrievably compromised prior to his seeing defendant, Dr. Maynard's statement was based solely upon his examination of the kidney at the time of surgery. Moreover, Dr. Maynard was unable to state how long the obstruction in the kidney had existed.
The plaintiff contends that Dr. Shemin's testimony was based upon Dr. Maynard's testimony. Dr. Shemin testified that testing was not completed on plaintiff's kidney prior to surgery to determine if there was any function, and his opinion regarding plaintiff's condition was derived from Dr. Maynard's operative report.
The plaintiff argues that Dr. Wishnow was a rebuttal witness called to contradict Dr. Maynard's testimony that plaintiff's kidney was not functioning in February 1994. The plaintiff asserts that Dr. Wishnow's testimony revolved around the operative records of Dr. Maynard. When plaintiff attempted to question Dr. Wishnow on causation, defendant's objection was sustained as beyond the scope. Alternatively, plaintiff contends that Dr. Wishnow could not identify when plaintiff's kidney became irretrievably compromised based solely upon a review of the operative report. However, Dr. Wishnow testified that plaintiff's kidney was functioning in February 1994, based upon clinical findings, answers to interrogatories, plaintiff's deposition, defendant's deposition, and the operative report.
After reviewing all the evidence before it, this Court finds that the jury's verdict was consistent with the evidence and the instructions given to the jury. The defendant's experts, Drs. Blond and Wishnow, testified that the kidney was functioning at the time defendant saw plaintiff in February 1994. On the other hand, defendant's experts testified that plaintiff's kidney was compromised prior to defendant's seeing plaintiff.
If the trial justice determines, after reviewing the evidence, that reasonable minds could come to different conclusions, the jury verdict should not be disturbed. Galusha v.Carlson, 120 R.I. 204, 206, 386 A.2d 634, 635 (1978); Turgeon v.Davis, 120 R.I. at 591, 388 A.2d at 1175. However, if the trial justice's "independent judgment tells [her] that the jury verdict is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the preponderance of the evidence, [s]he should set aside the jury's verdict and order a new trial." Galusha v. Carlson, 120 R.I. at 206-07, 386 A.2d at 635; Turgeon v. Davis, 120 R.I. at 591-92, 388 A.2d at 1175; Barbato v. Epstein, 97 R.I. at 195, 196 A.2d at 837.
The fact that the testimony of the parties' experts are conflicting as to causation does not render the verdict contrary to the evidence or indicate the jury overlooked material evidence. "It is well settled that where the testimony of two witnesses is conflicting and the trier of fact expressly accepts the testimony of one of the witnesses, he implicitly rejects that of the other." Turgeon, 120 R.I. at 592, 388 A.2d at 1175.
Although reasonable minds could differ as to assessing the credibility and weight of the expert's testimony, this Court does not find that the jury verdict failed to respond to the merits of the controversy or was against the fair preponderance of the evidence.
 The Empty Chair Jury Instruction
Additionally, defendant argues that the jury verdict was tainted by trial counsel's inappropriate comments during closing argument regarding the empty chair doctrine. "Under the empty-chair doctrine a trial justice may charge a jury that it may infer from a litigant's unexplained failure to produce an available witness who would be expected to give material testimony in the litigant's behalf that the witness, had he occupied the empty chair, would have testified adversely to the litigant." Myles v. Women and Infants Hosp. of R.I.,504 A.2d 452, 456 (R.I. 1986). The defendant notes that the empty chair doctrine has not been applied in the civil arena to a party who argued the doctrine but did not request a jury instruction. The defendant states that the closing argument of plaintiff's counsel noted the failure of defendant to call certain witnesses during the trial. Relying on the criminal case of State v. Ayotte,693 A.2d 1032, defendant contends that plaintiff must first lay a foundation demonstrating that the missing witness is available, and the failure of defendant's attorney to call the witness would lead the jury to infer that the testimony would be unfavorable to defendant's case.
The plaintiff's counsel notes that defendant did not object during closing argument. The plaintiff did not seek a jury instruction from the Court under the empty chair doctrine. Nonetheless, plaintiff contends that the closing argument did not prejudice or inflame the jury to the point where they were incapable of making a decision. Furthermore, defendant did not ask the Court for any curative instructions.
The empty chair doctrine is to be "applied with caution so that as a condition precedent in its invocation there must be a showing of the missing witness's availability to the person who would be expected to produce the witness, and in a jury case the person seeking to gain the benefit of the unfavorable inference must make it known to his or her adversary that a request for such a charge is going to be made of the trial justice." Belangerv. Cross, 488 A.2d 410, 413 (R.I. 1985). The plaintiff did not seek a jury instruction under the empty chair doctrine. The defendant sought to convince the jury that he had met his standard of care because other physicians had treated plaintiff for a urinary tract infection but also failed to order an ultrasound. As Drs. Koroly and Blond testified that defendant deviated from the standard of care, the comment to the jury by plaintiff's counsel during closing argument was not prejudicial.
For the foregoing reasons, defendant's Motion for New Trial is denied. Counsel shall prepare an entry of judgment in accordance with the above decision.