DECISION
Before this Court are two Rule 37 motions to compel discovery filed by Plaintiffs', Barbara Brokaw, Raymond Mutz, Tammy Oakley, and Delza Young, (Plaintiffs) in the underlying Kugel Hernia Patch litigation. In its first motion, Plaintiffs request this Court to compel Defendants C.R. Bard, Inc. and Davol Inc. ("Defendants") to make available approximately 170 documents relating to internal investigations performed by Quintiles Consulting ("Quintiles") for which Defendants claim work product privilege. In its second motion, Plaintiffs seek a court order compelling Defendants to produce, and specifically identify, documents used to prepare a Rule 30(b)(6) witness for an upcoming deposition. In addition, Plaintiffs seek the corporate personnel files and other documents related to four sales representatives.
 Plaintiffs' First Motion To Compel Discovery
In their first motion to compel, Plaintiffs demand production of approximately 170 documents contained in Defendant's privilege log. The documents in question consist of audits and investigations performed by Quintiles following Defendants' decision to recall its Extra Large Composix Kugel Hernia Patch in December 2005 and *Page 2 
March 2006. Defendants have maintained that the documents are protected by two independent privileges: the self-critical analysis privilege and the work product privilege. In October 2008, this Court issued a decision holding that the self-critical analysis privilege is not a recognized privilege under Rhode Island law and ordered it removed from Defendants' privilege log. Plaintiffs now challenge Defendants' use of the work product privilege to protect the Quintiles' documents. Specifically, Plaintiffs argue that the documents withheld by Defendants were not prepared "because of" anticipated litigation, as is required, but rather to comply with a Food and Drug Administration (FDA) audit. In the alternative, Plaintiffs contend that Defendants' assertion of work product privilege, even if validly exercised, would be overcome by their "substantial need" for the documents in question. Defendants, however, insist that the Quintiles documents are protected by the work product doctrine and rely principally upon the sworn affidavit of then General Counsel and Vice-President for Bard, Judith Reinsdorf, who avers that the Quintiles audits were undertaken at her direction "to prepare for anticipated litigation."
"The philosophy underlying modern discovery is that prior to trial, all data relevant to the pending controversy should be disclosed unless the data is privileged. The rationale for such disclosure is that controversies should be decided on their merits rather than upon tactical strategies." Cabral v. Arruda, 556 A.2d 47, 48 (R.I. 1989) (citing 8 Wright Miller, Federal Practice and Procedure: Civil § 2001 at 15 (1970)). Despite the extremely broad scope of discovery, the work product privilege is a traditional limit to the discovery of trial-preparation materials. Id. Super. R. Civ. P. 26(b)(3), which is in part a codification of the seminal United States Supreme Court caseHickman v. Taylor, *Page 3 329 U.S. 495 (1947), establishes two categories of work product that warrant different levels of protection. See Robert B. Kent et al.,Rhode Island Civil and Appellate Procedure, § 26:5 (2006). The first type, frequently referred to as "opinion" or "core" work product, is an absolute privilege and requires courts to "protect against the disclosure of the [attorney's] mental impressions, conclusions, opinions, or legal theories." Super. R. Civ. P. 26(b)(3); CroweCountryside Realty Assoc., Co., LLC v. Novare Engineers, 891 A.2d 838,842 (R.I. 2006). The other type of work product, called "factual" or "ordinary" work product, creates a qualified immunity for documents and tangible things "prepared in anticipation of litigation" and may be overcome "upon a showing that the party seeking discovery has substantial need of the materials . . . [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Super. R. Civ. P. 26(b)(3); Crowe, 891 A.2d at 842. While the main purpose of the work product privilege is to prevent an attorney from "freeloading" on an adversary's work, Carbral, 556 A.2d at 48
(citing Hickman, 329 U.S. at 516), the party who asserts a privilege has the burden of establishing entitlement to it. Gaumond v. TrinityRepertory Company, 909 A.2d 512, 517 (R.I. 2006) (quoting Moretti v.Lowe, M.D., 592 A.2d 855, 857 (R.I. 1991)).
The threshold question, then, when determining whether particular documents qualify as work product is whether the party asserting the privilege has met its burden of establishing that they were "prepared in anticipation of litigation." To give meaning to that phrase, the Rhode Island Supreme Court has articulated the following test: "[T]he test is whether in light of the nature of the document or intangible material and the facts of the case the document can be said to have been prepared or obtained because of the *Page 4 
prospect of litigation, by or for an adverse party or its agent."Cabral v. Arruda, 556 A.2d at 49 (emphasis added). The "because of" test is also used by many of the federal circuit courts. See, e.g.,Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st
Cir. 2001); Logan v. Commercial Union Ins. Co., 96 F.3d 971, 976-77
(7th Cir. 1996); Martin v. Bally's Park Place Hotel,983 F.2d 1252, 1258 (3d Cir. 1993); Nat'l Union Fire Ins. Co. v. MurraySheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir 1992);Simon v. G.D. Searle Co., 816 F.2d 397, 401 (8th Cir. 1987). In Nat'l Union Fire Ins. Co., the Fourth Circuit Court of Appeals provided an even more detailed description of the approach:
 [B]ecause litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity. The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3). Nat'l Union Fire Ins. Co., 967 F.2d at 984 (internal citations and quotations omitted).
The National Union Fire Court went on to state that "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question."Id.
Plaintiffs argue that the circumstances surrounding the preparation of the Quintiles' documents suggest that that they were not created in anticipation of litigation, but rather for the ordinary business purpose of ensuring "future compliance with internal regulatory policies." Plaintiffs first point out that Quintiles, by its own description on its *Page 5 
website, provides assistance with product development, marketing, and FDA compliance, not litigation strategies. Furthermore, based upon documents that have already been produced, Plaintiffs assert that Quintiles was hired by Defendants for the purpose of addressing an FDA inspection which occurred nearly a year before any lawsuits were filed. Among other documents, Plaintiffs cite to an executive summary of the work performed by Quintiles, which describes its audit as "a full Quality Systems audit and a verification of the corrective action to the FDA form-483 observations issued in the January 2006 FDA audit." Lastly, Plaintiffs also point to numerous examples wherein Defendants have recently changed the privilege asserted with respect to particular Quintiles' documents from self-critical analysis "undertaken to evaluate and ensure future compliance with internal regulatory policies" to "prepared at request and direction of legal counsel in anticipation of litigation." These recent revisions, Plaintiffs suggest, are further evidence that the Quintiles' documents were truly prepared for the purpose of FDA compliance.
Balanced against this circumstantial evidence, Defendants have produced the affidavit of Bard's general counsel, Judith Reinsdorf. The affidavit states that the Quintiles' audits were undertaken to prepare for anticipated litigation and that Reinsdorf "informed Quintiles before they began work that their audits and investigations were to enable the Bard Legal Department to provide Bard with legal advice." Defendants further point out that the affidavit postdates the December 2005 recall of three models of the Composix Kugel Patch due to reported ring breaks leading to patient injuries. In those circumstances, Defendant argues, it would be difficult to "imagine a general *Page 6 
counsel of a medical device company not contemplating personal injury litigation." (Hearing Tr. 50.)
Nevertheless, Plaintiffs have produced some persuasive evidence that the "driving force" behind preparation of the Quintiles' documents was not anticipation of litigation, but rather compliance with FDA regulations. Materials prepared pursuant to regulatory requirements are not documents prepared in anticipation of litigation. See
Fed.R.Civ.P. 26(b)(3) Advisory Committee Note; National Union Fire,967 F.2d at 984. However, the Court is also mindful that Quintiles was engaged by Defendants following a recall of its products, which is an event that reasonably could result in litigation. Without actually viewing the contested documents, the Court is reluctant to decide, based upon the present record, whether Defendant has met its burden of establishing that the documents in question were prepared in anticipation of litigation. Accordingly, the Court orders that the Quintiles' documents should be produced for in camera review within fourteen days of this decision.
 Plaintiffs' Second Motion To Compel Discovery
In their second motion to compel, Plaintiffs seek production of the materials used by Defendants to educate and prepare their Rule 30(b)(6) corporate witness for an upcoming deposition, as well as copies of employee files for four sales representatives allegedly responsible for selling the hernia repair devices that injured Plaintiffs. With respect to the first request, Plaintiffs argue that R.I.R. Evid. 612, governing the use of writings to refresh a witness' memory, requires Defendants to specifically identify the materials reviewed by their corporate witness before a deposition. Defendants object, not to producing the documents, but to specifically identifying which documents, out of the *Page 7 
50,000 or so pages already produced, were used to prepare their corporate witness. Defendants urge the Court to adopt the reasoning ofSporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985), which held that "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product."
Rhode Island Rule of Evidence 612 provides in relevant part:
 [I]f a witness uses a writing to refresh his or her memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, unless the court, in its discretion, determines that the burden of production substantially outweighs the likely benefits of production, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross examine the witness thereon, and, in the trial justice's discretion, to introduce in evidence those portions which relate to the testimony of the witness.[1]
By its plain language, the rule provides that if a witness uses a writing to refresh his or her memory even before testifying, an adverse party is entitled, in the court's discretion, to have the writing produced at the hearing, to inspect it, and to cross-examine the witness about the writing. R.I.R. Evid. 612. The issue raised by Plaintiff's use of Rule 612 to compel disclosure of the materials Defendants used to prepare their corporate witness for an upcoming deposition is whether the rule confers inspection rights when the witness is not using the document to refresh his or her memory. The Advisory Committee's Note to Rhode Island Rule 612 suggests that such a foundational requirement exists: "Under Rhode Island law, it appears that the only foundational requirement for use of a writing to refresh memory is that the witness clearly appear to *Page 8 
have forgotten something." R.I. R. Evid. 612 Advisory Committee Note (citing McAllister v. Chase, 65 R.I. 122, 128, 13 A.2d 690 (1940). Some commentators argue that when a witness reviews a document before testifying for a reason other than to refresh memory, the rules of discovery, rather than Rule 612, should apply:
 Some courts apply Rule 612 to cases where a witness reviews a writing before testifying for purposes other than to refresh recollection. This occurs where an attorney gives a witness documents that provide the witness background information about the case as to matters he did not perceive. Typically, the witness is an expert and the documents are given to prepare for a deposition. Since the information relates to matters the witness did not perceive, the procedure does not refresh the witness' memory.
 . . .
 [T]he production of documents in such a case should be a matter controlled by the rules regulating discovery, rather than Rule 612. Wright and Gold, Federal Practice and Procedure, Federal Rules of Evidence, § 6183 at 447-48.
Since a Rule 30(b)(6) witness "is not testifying as to his own personal knowledge but rather as to what was known to the organization,"see Kent, Rhode Island Civil and Appellate Procedure, § 30:6, it is likely that at least some of the documents being used to prepare the witness are not for the purpose of refreshing his or her recollection.
However, this does not mean that the documents should not be identified pursuant to Rule 26(b)(1), which allows great freedom in discovery, so long as the material sought is relevant and not privileged. The background materials used to prepare a corporate witness are clearly relevant to the subject matter of the case. Furthermore, Defendants do not claim that the materials, all or most of which have already been produced among thousands of other pages, are subject to attorney-client or work product privileges. What Defendants argue, however, is that being required to identify the documents reviewed by *Page 9 
their corporate witness reveals defense counsel's privileged mental impressions of the case. On similar facts, the Third Circuit inSporck held that "the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product." 759 F.2d at 316. TheSporck Court reasoned that "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." Id. This Court, however, finds the reasoning of the dissenting opinion in that case to be more persuasive:
 "The problem with the petitioner's theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent. There are many reasons for showing a document or selected portions of a document to a witness. The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition. This is a far cry from the disclosure of the lawyer's opinion work product." Sporck, 759 F.2d at 319 (J. Seitz, dissenting).
Moreover, the First Circuit has suggested that the majority's reasoning in Sporck is "flawed" and has declined to follow it.[2] In re San JuanDupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1018
(1st Cir. 1988) ("This reasoning, we suggest, is flawed because it assumes that the revelatory nature of the sought-after information is, in itself, sufficient to cloak the information with heightened protection of opinion work product."). *Page 10 
Accordingly, in light of the liberal rules of discovery and the reasonableness of Plaintiffs' request, considering that the documents at issue have already been produced and are non-privileged, this Court orders Defendants to identify for Plaintiffs the materials reviewed by their Rule 30(b)(6) witness.
Plaintiffs also request under this motion the personnel files of four Davol Territory Managers, who were allegedly "responsible for selling the hernia repair devices that injured Plaintiffs." Plaintiffs maintain that any information relating to the sales representatives' "performance, training, education, and conduct is relevant to this action." Defendants insist that they have already produced everything they have pertaining to the training, performance or evaluation of the employees, but resist production of their personnel files claiming that the information contained therein is irrelevant and confidential. Defendants maintain that there is a strong public policy evidenced in the case law against disclosure of personnel files.
While "the scope of discovery is exceedingly broad," Kent Rhode IslandCivil and Appellate Practice § 26:2, some courts have recognized that a strong public policy exists against disclosure of personnel files due to the often private nature of their contents. See, e.g., In re SunriseSecurities Litigation, 130 F.R.D. 560, 580 (E.D. Pa. 1989); In re OneBancorp Securities Litigation, 134 F.R.D. 4, 12 (D. Me. 1991). These courts have held that discovery of personnel files is permissible if "(1) the material sought is `clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." In re Sunrise Securities Litigation,130 F.R.D. at 580. *Page 11 
While this Court recognizes that the information contained in the personnel files at issue may be relevant and not otherwise readily available, it is also mindful that the files likely contain sensitive and irrelevant personal information. In order to weigh Plaintiffs' interest in disclosure against Defendants' interest in protecting the privacy of its employee files from unnecessary intrusion, the Court orders the files to be produced for in camera review within fourteen days of this decision.
 Conclusion
The Court orders Defendants to produce the Quintiles documents and corporate employee files for in camera review within fourteen days. In addition, the Court orders Defendants to specifically identify for Plaintiffs all documents or other material used by their 30(b)(6) corporate witness in preparation for the upcoming deposition.
[1] Rule 612 is applicable to depositions through Super. R. Civ. P. 30(c), which states: "[e]xamination and cross-examination of witnesses may proceed as permitted at trial under the provisions of the applicable Rhode Island Rules of Evidence except Rule 103 and 615."
[2] See also Chevron U.S.A., Inc. v. U.S., 83 Fed.Cl. 195, 198 (Fed. Cl. 2008) (finding that "neither the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, nor the federal appellate courts in the First, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh circuits have "adopted" the majority's reasoning inSporck.") *Page 1