**Supreme Court**

No. 2010-288-Appeal.
(PC 99-5226)

State of Rhode Island       :

v.               :

Lead Industries Association, Inc.     :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island          :

v.                   :

Lead Industries Association, Inc.     :

Present: Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**

"To-morrow, and to-morrow, and to-morrow, Creeps in this petty
pace from day to day."[1]

In a case whose life begins to rival the age of the biblical Methuselah, we are confronted

with another anfractuous issue between the warring parties. Before this Court is the appeal of

Sherwin-Williams Company (Sherwin-Williams)—one of the defendant paint companies—from

an order denying its motion for a protective order to prohibit the disclosure of and the use of an

internal company document. Sherwin-Williams argues that the disclosure of that document

would offend both the attorney-client privilege and the work-product doctrine. Not surprisingly,

the state maintains that the document is not privileged in any way and, therefore, it is not

protected from disclosure. For the reasons set forth in this opinion, we vacate the order of the

Superior Court denying Sherwin-Williams' motion for a protective order.

---

[1] William Shakespeare, Macbeth, Act V, Scene 5.

# I
## Facts and Travel

The factual background of this case is set forth at length in <u>State v. Lead Industries Association, Inc.</u>, 951 A.2d 428 (R.I. 2008). For the sake of brevity, we shall summarize only the facts that are relevant to the specific issues raised by this appeal.

# A
## Background

This case arises from the public-nuisance lawsuit filed by the state—in 1999—against Sherwin-Williams and other paint companies not relevant to this appeal. <u>See</u> <u>Lead Industries Association, Inc.</u>, 951 A.2d at 434. This Court vacated a judgment that arose from a jury verdict in favor of the state's public-nuisance claim on July 1, 2008. After prevailing on appeal, defendants, including Sherwin-Williams, filed a motion in the Superior Court for an award of costs, pursuant to Rule 54 of the Superior Court Rules of Civil Procedure. On September 24, 2008, the state filed a memorandum in opposition to defendants' motion for costs. Among other arguments that it advanced, the state contended that the Superior Court should take into consideration that Sherwin-Williams did not suffer any financial hardship as a result of its defense in the lead-paint litigation. To support its argument, the state attached a document that will be referred to as "exhibit no. 16," which consisted of three PowerPoint slides extracted from an eighty-slide presentation. The slides had been prepared by or under the direction of Sherwin-Williams' Associate General Counsel-Litigation and were included in a presentation to Sherwin-Williams' Board of Directors and senior management at a meeting that took place on October 20, 2004. The three slides at issue were entitled "Insurance And Lead Litigation," "Reimbursement of Lead Defense Costs," and "Potential Insurance Coverage for Lead Liabilities." In its opposition to the imposition of costs, the state sought—through these documents—to

demonstrate that Sherwin-Williams had benefited from significant insurance coverage when it defended the underlying lawsuit, and, therefore, it had not suffered any financial hardship.

On September 25, 2008, Sherwin-Williams received a copy of the state's supplemental memorandum, which included exhibit no. 16. After its outside counsel[2] reviewed the filing, this dispute erupted because Sherwin-Williams took issue with the discussion in the state's memorandum about the figures set forth in exhibit no. 16, as well as with the attachment of the document to the memorandum. Sherwin-Williams maintained that the slides were prepared by its general counsel at the request of the board of directors and, further, that they included privileged legal advice on the insurance coverage that was potentially available to defend the claims of public nuisance that had been lodged against it. Outside counsel determined that the figures in exhibit no. 16 had not been produced in any litigation or in any other public forum, and counsel further asserted that Sherwin-Williams considered the information contained therein to be privileged. The company insisted that exhibit no. 16 had been kept confidential and that it had been discussed only at a meeting of the company's board of directors, that no notes had been taken by attendees, and that no copies of the slides had been disseminated.

On September 26, 2008, Sherwin-Williams' counsel contacted counsel representing the state to inquire about how the state came to possess the slides.[3] In a response that proved to be

---

[2] In this opinion, we will refer to the attorneys who represented Sherwin-Williams in the lead-paint litigation as "outside counsel."

[3] In attempting to learn how the state obtained the slides, Sherwin-Williams' outside counsel made reference to a facsimile banner that ran along the top of exhibit no. 16, which indicated that a thirty-four-page facsimile had been sent to a representative of the state on September 12, 2006, from a FedEx Kinko's store. It is noteworthy that in April 2009, Sherwin-Williams filed a lawsuit against counsel who represented the state in this litigation in the Court of Common Pleas for Cuyahoga County, Ohio, 2011 WL 2601249, Case No. CV–689237 (O'Donnell, J.), in which it alleged that the state's counsel had refused to "'explain how it came into possession of Sherwin-Williams' Documents and the Fax,' or 'identify and return all of Sherwin-Williams'

unsatisfactory to Sherwin-Williams, the state declined to provide the identity of the sender. However, the state did offer to withdraw exhibit no. 16 if, in return, Sherwin-Williams would stipulate that insurance coverage had been available to it for the expenses involved with defending the lead-paint cases. Sherwin-Williams flatly refused to do so and, in response, it filed a motion for a protective order.[4]

There were other twists in the factual scenario: on September 26, 2008, in an effort to limit the availability of the supplemental memorandum and exhibit no. 16, Sherwin-Williams' outside counsel contacted Jane Genova, author of a blog[5] known as "Law and More," to whom he had previously e-mailed a copy of the state's supplemental memorandum and exhibits for her blog. He notified Genova that the state's supplemental memorandum contained information that he now contended was protected by the attorney-client privilege and the attorney work-product doctrine. Counsel instructed the blogger to refrain from reading the memorandum and its attached exhibit no. 16 and to not circulate it to anyone. He then provided—less than an hour later—an updated memorandum, this time bereft of exhibit no. 16. Similarly, counsel for NL Industries, a codefendant, sent the state's supplemental memorandum to a LexisNexis representative, who was the editor for the "Mealey's Litigation Report Lead Paint." However, as discussed below, Sherwin-Williams' outside counsel soon contacted the LexisNexis representative after discovering that he had a copy of the supplemental memorandum and requested that the memorandum not be made publicly available.

---

Documents," among other things. At oral argument, the parties indicated that litigation is ongoing.

[4] While the motion was pending, the parties agreed to seal the state's supplemental memorandum and all exhibits attached thereto until the trial justice could make a determination.

[5] A "blog" is defined as "[a] weblog," which is defined as "[a] website that displays in chronological order the postings by one or more individuals and usually has links to comments on specific postings." The American Heritage Dictionary of the English Language 198, 1949 (4th ed. 2006).

**B**
**Motion for Protective Order**

On September 30, 2008, Sherwin-Williams filed a motion for a protective order, requesting that the trial justice "seal [exhibit no. 16] until further order of the [c]ourt, to prohibit the [s]tate and its counsel from disclosing or using Sherwin-Williams' privileged documents,[6] and to permit discovery regarding [e]xhibit [no.] 16 and all other privileged documents that may be in the possession of the state and its attorneys."[7] Attached to the motion for a protective order, Sherwin-Williams included an affidavit from John Lebold, an associate general counsel, in which he explained how and why he prepared the slides that were included in exhibit no. 16. In his affidavit, Lebold swore that one of his responsibilities was to "ascertain and obtain for Sherwin-Williams insurance coverage for litigation expenses," about which he "regularly advise[d] Sherwin-Williams' Board of Directors and management at their request." With regard to exhibit no. 16, he explained that—"in [his] role as Associate General Counsel for Sherwin-Williams"—he prepared and presented the slides to the board of directors and management "at their request to provide advice on potentially available insurance coverage under the terms of existing insurance policies." He stated that the slides "contain[ed] [his] evaluations and opinions as counsel to Sherwin-Williams regarding insurance coverage and [were] presented to the

---

[6] The state contends that the thirty-four-page facsimile was "the only Sherwin-Williams internal document in [s]tate's counsel's possession that was not produced through formal discovery."

[7] In defendant's supplemental memorandum of law in support of its motion for protective order to prohibit disclosure or use of privileged documents, it added requests that the trial justice: (1) strike exhibit no. 16 and all discussion of it or its contents from the state's memorandum and compel destruction of all copies of that memorandum and exhibit no. 16 in the possession of any party or its counsel; (2) order that any other person to whom a copy of the memorandum and exhibit no. 16 had been given destroy the copies and not disclose or use exhibit no. 16 or information contained therein; and (3) compel the state and its attorneys to return the document contained in exhibit no. 16 and identify and return all other Sherwin-Williams privileged documents that it or its counsel had in their possession, custody, or control and that were obtained outside of the formal discovery process.

[b]oard of [d]irectors to convey legal advice and respond to questions asked [to him] by the [b]oard of [d]irectors and management."

He also averred that he "intended the documents in [e]xhibit [no.] 16 to be protected under the attorney-client privilege," that "they contain[ed] [his] work product," and that "[t]he * * * slides * * * were not disseminated to any individual outside of Sherwin-Williams nor were the contents of the slides discussed with any individuals outside of the Company other than attorneys for Sherwin-Williams." Finally, he noted that "[a]fter investigation, [he] * * * determined that neither the [b]oard of [d]irectors nor management produced or authorized the disclosure of [e]xhibit [no.] 16 or the PowerPoint slides and information contained in it to any person outside Sherwin-Williams, except its counsel," and that "[t]he [b]oard and management also intended the documents and information contained in [e]xhibit [no.] 16 to be privileged and confidential": "[n]o director was allowed to take copies of those PowerPoint slides out of the meeting," "[t]he copies of the * * * minutes and presentations * * * [were] kept in a secure location," and "those copies [were] available on request only to the [b]oard, management, counsel, and other approved employees."

On October 1, 2008, the motion for a protective order was argued before the trial justice. He ordered the supplemental memorandum and exhibit no. 16 to remain under seal pending the resolution of Sherwin-Williams' motion.[8] On October 1, 2008, outside counsel e-mailed Genova, informing her that the trial justice had placed the state's supplemental memorandum for costs under seal because it contained privileged information, and he requested that she remove it from her blog. Genova confirmed that she had deleted every part of the file from her computer,

---

[8] On October 2, 2008, the trial justice entered an order stating that the state's supplemental memorandum in opposition to defendants' motion for costs as well as all exhibits attached thereto would remain under seal until further order of the court.

that she did not post the memorandum and exhibits on her blog, and that no one had requested a copy of the documents, despite the earlier offer in her blog that she would provide the memorandum upon request.[9]

After taking these protective steps, outside counsel then sent a letter to the trial justice, confirming that (1) Genova did not read or disseminate any of the contents from the supplemental memorandum or exhibit no. 16; (2) his law firm had conducted a thorough Internet search and found only one publication of the privileged information, an op-ed piece authored by the attorneys for the state that indicated "[a]s of 2004 * * * Sherwin[-]Williams alone had spent in excess of $102 million on defense attorneys' fees and costs"; (3) the Superior Court clerk had confirmed that the supplemental memorandum and exhibits were not in the public file; and (4) the LexisNexis representative did not request any recent filings from the state and that it had agreed that the supplemental memorandum and exhibits would not be published.[10]

Ultimately, the trial justice did not agree with the arguments advanced by Sherwin-Williams; on March 25, 2009, he issued a written decision in which he concluded that there was an attorney-client relationship between general counsel and Sherwin-Williams at the time exhibit

---

[9] Sherwin-Williams' outside counsel made similar requests of the LexisNexis representative, asking for confirmation that the brief had not been posted on any LexisNexis website or otherwise had become publicly available. The LexisNexis representative responded the next day, assuring that the brief was not and would not be published. He did indicate that he would be writing a story about the brief, but that he would not mention any of the specific information relating to exhibit no. 16.

[10] After the motion was argued in the Superior Court, Sherwin-Williams filed a supplemental memorandum of law in support of its motion for a protective order to prohibit disclosure or use of privileged documents, which included an affidavit from Nancy J. Moore, a professor of law at Boston University School of Law, who served as Chief Reporter for the ABA Commission on Evaluation of the Rules of Professional Conduct, and who was a member of this Court's Committee to Review Rules of Professional Conduct, among other things. In her affidavit, Professor Moore concluded that exhibit no. 16 should be protected both as an attorney-client communication and as attorney work product.

no. 16 was created and that exhibit no. 16 had been submitted in counsel's role as an attorney. However, he also found that

> "[b]ased upon the facial appearance of [e]xhibit [no.] 16, the document appears to be merely a collection of numbers and statistics, lacking any legal opinions or conclusions. Thus, despite the claims Sherwin-Williams has made about the document and the actions [general counsel] undertook to create it, there remains a genuine question as to whether [general counsel] was actually acting as an attorney in connection with the communication at issue."

In his consideration of whether the predominate purpose of the slides was to convey a legal opinion, legal services, or assistance in some legal proceeding, the trial justice observed that, by virtue of associate general counsel Lebold's sworn affidavit, exhibit no. 16 was, in fact, created primarily for the purpose of rendering a legal opinion or providing legal services to the board. However, he concluded that before making a final decision about whether the document should be adorned with the cloak of privilege, he would permit the state to question, through limited discovery, the assertions set forth in general counsel's sworn affidavit with regard to the creation, contents, use, and purpose of exhibit no. 16.

In accordance with the trial justice's order, the state propounded interrogatories and document requests on Sherwin-Williams. The answers provided by Sherwin-Williams to those requests asserted that general counsel had prepared the information contained in exhibit no. 16, although a former employee had assisted in formatting and styling the PowerPoint slides. The answers also disclosed that the company had no knowledge that any copies of the board of directors' presentation had left the company's control and that only two paper copies had been retained after the board of directors' meeting. Those paper copies, Sherwin-Williams maintained, were secured under lock and key. Further, it avowed that no notes had been taken

during the board meeting and that potential insurance coverage had not been discussed with or reported to any shareholders or others not present at the board meeting.

On September 9, 2009, the trial justice—after reviewing the supplemental discovery—issued an oral decision in which he denied Sherwin-Williams' motion for a protective order. The trial justice concluded that

> "in compiling information as to the amounts of insurance coverage and the cost and fees incident to all lead litigation of Sherwin-Williams through the fall of 2004, the associate general counsel litigation, * * * of Sherwin-Williams, was imparting factual and business information rather than serving as a lawyer when he prepared or caused to be prepared the slides depicted on [e]xhibit [no.] 16."

Further, he noted that

> "[i]t may well be that that information served as the basis for protected advice or impressions imparted by him or others to the board at the October 2004 meeting. But that advice and/or those impressions are not reflected in [e]xhibit [no.] 16, nor is that advice or impressions discernable by the [c]ourt from the factual information there contained."

The trial justice then concluded that the contents of exhibit no. 16 were not privileged.

On June 28, 2010, a final order was entered, denying Sherwin-Williams' motion for a protective order. Sherwin-Williams timely appealed. The issue before this Court is whether certain documents included within the PowerPoint slides prepared by Sherwin-Williams' general counsel for the October 2004 board of directors' meeting were protected either by the attorney-client privilege or the attorney work-product doctrine.

## II
## Attorney Work-Product Doctrine

### A
### Standard of Review

Determining the scope of Rule 26(b)(2) of the Superior Court Rules of Civil Procedure is an issue of law, which we review de novo. Henderson v. Newport County Regional Young Men's Christian Association, 966 A.2d 1242, 1246 (R.I. 2009). However, "[i]n granting or denying discovery motions, a Superior Court justice has broad discretion," which "this Court will not disturb * * * save for an abuse of that discretion." Colvin v. Lekas, 731 A.2d 718, 720 (R.I. 1999); see Pastore v. Samson, 900 A.2d 1067, 1074 (R.I. 2006). Similarly, factual and evidentiary determinations are vested in the sound discretion of the trial justice. See United States v. Bisanti, 414 F.3d 168, 170-71 (1st Cir. 2005) ("'On an appeal respecting a privilege claim, the standard of review depends on the issue.' * * * Factual determinations are reviewed for clear error, legal determinations are reviewed de novo, and evidentiary determinations are reviewed for abuse of discretion." (quoting Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002))); see, e.g., Fireman's Fund Insurance Co. v. McAlpine, 120 R.I. 744, 754, 391 A.2d 84, 90 (1978) (after finding that a statement was entitled to the qualified privilege of Rule 26(b)(2) of the Superior Court Rules of Civil Procedure, the determination of whether the party seeking discovery met its burden of establishing that denial of production would result in an injustice or undue hardship was an issue vested in the sound discretion of the trial justice).

### B
### Analysis

Sherwin-Williams argues that general counsel's affidavit in and of itself established the applicability of the attorney-client privilege and the work-product doctrine, and that the trial

justice erred when he disregarded this uncontroverted affidavit. Sherwin-Williams also argues that the protections afforded to the documents were not waived because Sherwin-Williams took reasonable efforts to recover the disclosed information after it discovered there was privileged information in the state's supplemental memorandum and exhibit no. 16. Accordingly, Sherwin-Williams requests that this Court vacate the trial justice's decision and remand the case for entry of an order granting its motion for a protective order.

Conversely, the state argues that exhibit no. 16 is not protected by either the attorney-client communication privilege or the work-product doctrine because it consists merely of numbers and facts, and it is devoid of any legal analysis. The state also argues that any privilege to which the documents may have been entitled had been waived because exhibit no. 16 was not included in a privilege log that had been completed in connection with the underlying litigation, because counsel for Sherwin-Williams provided the state's supplemental memorandum with exhibit no. 16 to two different reporters and because there were third parties present at the board of directors' meeting.

The work-product doctrine affords broader protection than the attorney-client privilege. See State v. von Bulow, 475 A.2d 995, 1009 (R.I. 1984). As we begin our analysis, we make the initial observation that the trial justice did not make a clear determination as to whether exhibit no. 16 should be protected under the work-product doctrine. However, because the record before us is sufficient and because, in any event, our review is de novo, we are able to thoroughly consider the issue.[11]

---

[11] Although our usual practice would be to remand the matter to the Superior Court for further factfinding, we deem it appropriate to decide this issue because of the prolonged travel of this case and because the issue is relatively straightforward. We conduct such review only on rare occasions.

- 11 -

In Rhode Island, Rule 26(b)(3) codifies the work-product doctrine, and provides, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivisions (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

"To determine whether an item is work product, one must look, as a preliminary matter, at 'whether, in light of the nature of the document or tangible material and facts of the case, the document can be said to have been prepared or obtained because of the prospect of litigation, by or for an adverse party or its agent.'" Henderson, 966 A.2d at 1247 (quoting Cabral v. Arruda, 556 A.2d 47, 49 (R.I. 1989)). But "it is not necessary for litigation to have been initiated for a party to successfully invoke the work-product privilege afforded by Rule 26"; work product applies to documents prepared principally or exclusively to assist in anticipated or ongoing litigation. Henderson, 966 A.2d at 1247; see also Hickman v. Taylor, 329 U.S. 495, 511-12 (1947).

There are two distinct categories of work product that are protected by the work-product doctrine. See Henderson, 966 A.2d at 1247. The first category—often termed "opinion" work product—"refers to a document or other written material containing the mental impressions of an attorney or his or her legal theories." Id. Because it includes the actual thoughts of the attorney, opinion work product receives the highest level of protection: it "qualifies for absolute immunity

from discovery and under no circumstance may another party obtain, through discovery methods, an attorney's recorded thoughts and theories." Id.

A different, lesser level of protection applies to the second category of work product— "factual" work product. Henderson, 966 A.2d at 1248. Factual work product covers a wider spectrum than opinion work product: it encompasses "<u>any</u> <u>material</u> gathered in anticipation of litigation." Id. Indeed, this may apply even to nonattorneys; "[i]t is not necessary for the attorney to have prepared the materials or the documents for them to constitute work product." Id. The rationale for this protection is to "prevent an attorney from 'freeloading' on his or her adversary's work." Id. (quoting Cabral, 556 A.2d at 48). Factual work product is afforded only qualified immunity from discovery because it does not include the actual thoughts or mental impressions of the attorney. Id. When determining whether a particular document qualifies as factual work product, the party asserting the doctrine has the burden of establishing that the document was prepared in anticipation of litigation. Gaumond v. Trinity Repertory Co., 909 A.2d 512, 517 (R.I. 2006). Once the party asserting the work-product doctrine has established that the document was prepared in anticipation of litigation, the party seeking discovery of the document must demonstrate (1) that it has substantial need for the materials in preparation of its case and (2) that it is unable to obtain the information by other means without undue hardship. Crowe Countryside Realty Associates, Co. v. Novare Engineers, Inc., 891 A.2d 838, 842 (R.I. 2006).

At issue here is whether exhibit no. 16 constitutes work product. Sherwin-Williams argues that exhibit no. 16 contains opinion work product, derived from its general counsel's legal analysis of insurance policies, and that the trial justice erroneously failed to credit the general counsel's affidavit. The state argues that exhibit no. 16 contains only facts and business-related

information, as opposed to legally-related facts, and therefore—even though exhibit no. 16 may have been prepared by, or at the direction of, an in-house counsel—it is not protected by the work-product doctrine. The state also argues that exhibit no. 16 should not be protected under factual work product, because in that instance the work-product doctrine applies only if a document was prepared in "anticipation of litigation," and here there was no anticipated litigation during the relevant time. The state also adds that exhibit no. 16 contains otherwise discoverable facts, i.e., "insurance information," and, because Sherwin-Williams produced its insurance information during discovery, as required by Rhode Island law, exhibit no. 16 should have been produced and the work-product doctrine does not apply.

In our opinion, exhibit no. 16 cannot be considered to be opinion work product because it does not reflect the thoughts, opinions, or conclusions of general counsel. On its face, exhibit no. 16 seems merely to provide updates on insurance considerations for the ongoing lead paint litigation. There appears to be nothing that is reflective of legal advice or legal issues, nor do the slides reveal any confidential communications made by the board of directors or management to general counsel. Accordingly, there is no reason to conclude that exhibit no. 16 itself—as distinguished from whatever oral advice may have been given by the attorneys to the client during the course of the meeting—constitutes legal advice.

However, with regard to the second category—factual work product—it is our opinion that Sherwin-Williams has met its burden. The record is uncontroverted that exhibit no. 16 was prepared at the request of the board of directors during its quest for advice about the insurance coverage that was available to the company for the pending lead-paint litigation. The board of directors' meeting took place in October 2004, approximately five years after the lead paint litigation had been initiated and approximately four years before Sherwin-Williams filed its

motion for an award of costs. See, e.g., United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) ("[A] party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." (emphasis added)). Nothing in the record suggests that general counsel previously had commissioned this sort of investigation, nor is there any indication that this investigation was solicited for any reason other than for the pending lead-paint litigation. We, therefore, conclude that exhibit no. 16 was prepared in anticipation of litigation and that it falls within the protective embrace of Rule 26(b)(3). See Henderson, 966 A.2d at 1248-49.

Having determined that the documents qualify as factual work product, the next step in our analysis is to determine whether precluding discovery would lead to injustice or undue hardship, an issue vested in the sound discretion of the trial justice. See Fireman's Fund Insurance Co., 120 R.I. at 754, 391 A.2d at 90. Because he found that the documents were not privileged in any way, the trial justice did not engage in that analysis. However, we have determined that the appellate record is sufficient for this Court to reach its own conclusion that the state could not overcome the burden of establishing injustice or undue hardship. The burden of demonstrating that the protected document nevertheless is discoverable because of substantial need and a resulting injustice or undue hardship is on the party seeking discovery. Id. at 754, 391 A.2d at 90. At oral argument, the state acknowledged that it could have garnered the information contained in exhibit no. 16 on its own from the insurance policies that Sherwin-Williams produced during discovery. Accordingly, because the state was not foreclosed from obtaining material equivalent to exhibit no. 16 from other avenues, we hold that the state has not met its burden of establishing undue hardship. See Henderson, 966 A.2d at 1248.

In addition, we note that the state cannot demonstrate a substantial need for the data in exhibit no. 16. In reviewing the trial justice's decisions allocating costs, we observe that he did not give significant weight to exhibit no. 16. Specifically, in his final decision of May 25, 2010, the trial justice considered Sherwin-Williams' motion, pursuant to Rule 54(d) of the Superior Court Rules of Civil Procedure, seeking an award of the costs that it incurred during litigation. The trial justice noted the factors to be weighed in determining whether to award costs, including

> "the financial need of the prevailing party for reimbursement, the burden that the imposition of costs would have on a non-affluent, non-prevailing party, any bad faith or misconduct by the prevailing party during the litigation, * * * the good faith of the plaintiff in filing the action[,] * * * [and] the 'equities and public interests at stake.'"

Then the trial justice concluded that, based on the totality of the circumstances—which he clarified to include the state's good faith in commencing and pursuing the litigation, that substantial benefits had been conferred on both the public and Sherwin-Williams, and that imposition of all costs on the state would act as an unnecessary penalty—each party should bear its own costs. Indeed, the trial justice <u>specifically</u> said that he was not taking the parties' finances into account. Accordingly, we hold that the state has failed to establish its substantial need for Sherwin-Williams' work product.

### C
### Waiver

The state argues that even if the work-product doctrine applies, Sherwin-Williams waived its claim of protection in three separate ways: (1) by including third parties in the board of directors' meeting where exhibit no. 16 was presented; (2) by disclosing exhibit no. 16 to a blogger and a LexisNexis representative; and (3) by failing to include exhibit no. 16 in the privilege log prepared in the underlying litigation. We shall address waiver because it has been

sufficiently raised and preserved for appellate review, even though the trial justice did not reach this issue. See Ruzzo v. LaRose Enterprises, 748 A.2d 261, 265-66 (R.I. 2000).

**1**
**Board of Directors' Meeting**

First, the state argues that any protection was waived because third parties attended the board of directors' meeting when exhibit no. 16 was presented. Specifically, the state argues that these third parties, by virtue of their job titles—the senior vice president of human resources, the vice president and controller of the consumer division, and the president of the international division—could not have added anything in the way of input on the alleged legal advice with regard to exhibit no. 16 or the lead litigation. Sherwin-Williams argues that the officers were not third parties to Sherwin-Williams and, therefore, their presence did not waive any protection.

Because "the purpose of the work-product rule 'is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client,'" it follows that "disclosure of [work-product information] to third persons does not waive the work product immunity." 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 at 531, 532 (3d ed. 2010); see von Bulow, 475 A.2d at 1009 (explaining that "because it looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, the work[-]product privilege is not automatically waived by any disclosure to a third party" (quoting In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982))). There is no waiver where the transferor of the protected information and the recipient of that information are coparties or where they share interests in a matter litigated against a common adversary. See, e.g., 8 Wright and Miller, § 2024 at 532 & n.67. However, a disclosure to a third party that substantially increases the likelihood that protected content would be revealed to an adverse party might waive the work-product protection. Id. at 532.

In this case, it is our opinion that Sherwin-Williams did not waive work-product protection because of the disclosure of the disputed information to senior management personnel who attended the meeting of the board of directors. Disclosure to them did not substantially increase the likelihood that the protected content would be revealed to an adverse party. Accordingly, we hold that Sherwin-Williams did not waive the work-product protection because of the presence of the holders of three top-management positions at the board of directors' meeting.

## 2
## Media Sources

Similarly, the state argues that disclosure of exhibit no. 16 and the state's supplemental memorandum to a blogger and a LexisNexis representative waived any protection. The state contends that Sherwin-Williams took no precautions to ensure that exhibit no. 16 would remain confidential or would not be disclosed to the public. Sherwin-Williams responds that this limited disclosure of the state's memorandum and exhibit no. 16 did not waive the protection because it was the state's improper actions that put exhibit no. 16 in the public arena. Sherwin-Williams maintains that it treated exhibit no. 16 as privileged at all times: it employed numerous safeguards to preserve its privileged status, never authorized its disclosure, and acted diligently and reasonably to recover exhibit no. 16 as soon as it discovered that the state had wrongfully published it in a public filing.

As discussed above, disclosure of work-product information to third parties does not waive the protection, unless that disclosure substantially increases the likelihood that the information would be revealed to an adverse party. 8 Wright & Miller, § 2024 at 532. When an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of his client—knowingly increasing the possibility

that an opponent will obtain and use the material—he may be deemed to have waived work product protection. Id.

Here, we hold that Sherwin-Williams did not freely or voluntarily disclose the content of exhibit no. 16. It is undisputed by the parties that exhibit no. 16 was obtained independent of the formal discovery process. In fact, the state admitted that it obtained exhibit no. 16 "during [its] own efforts" outside of the formal discovery process.

After Sherwin-Williams discovered that exhibit no. 16 was attached to the state's supplemental memorandum, outside counsel took prompt, affirmative steps to protect the information contained in exhibit no. 16: it contacted counsel representing the state to inquire how the state came to possess the slides; it contacted both the blogger and the LexisNexis representative to request that each destroy the document and to confirm that neither had disseminated or disclosed the document; it contacted the Superior Court clerk to verify that the state's supplemental memorandum and exhibit no. 16 were not available in the public case file; and it conducted a thorough Internet search to ensure that the supplemental memorandum and exhibit no. 16 were not otherwise available.

The state argues that Sherwin-Williams waived any protection because it resent the state's supplemental memorandum to Genova, which included a discussion of the very facts contained in exhibit no. 16. It certainly appears that Sherwin-Williams' outside counsel failed to adequately screen the supplemental memorandum before resending it to Genova. That error, however, does not reflect a pattern of carelessness; neither does it evidence an intent or willingness to waive the protections of the work-product doctrine. Even if Sherwin-Williams' outside counsel did not adequately screen the memorandum, the fact that counsel undertook a screening procedure indicates that there was precaution to avoid disclosure of privileged

material. Further, outside counsel promptly objected to the disclosure after discovering it, suggesting a genuine intent to preserve confidentiality. There is no evidence that Sherwin-Williams ever intended to disclose exhibit no. 16. Indeed, the exhibit came into the state's hands only because—unknown to Sherwin-Williams or its counsel—an unauthorized source disclosed the document. In our opinion, the record clearly establishes that Sherwin-Williams intended to keep exhibit no. 16 confidential. Accordingly, we hold that Sherwin-Williams' disclosure to the blogger and the LexisNexis representative did not waive any work-product protection.

### 3
### Privilege Log

Finally, the state argues that any protection that might have been afforded was waived because Sherwin-Williams failed to include the document in its privilege log. Sherwin-Williams argues that exhibit no. 16 was not required to be listed in a privilege log because the state never requested documents that fit the description of exhibit no. 16 during the discovery phase of the case.

A party who withholds discovery materials must provide sufficient information, usually in the form of a privilege log, to enable the other party to evaluate the applicability of protection. Indeed, Rule 26(b)(5) states that:

> "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged * * * the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

The party withholding discovery material must be specific enough in its privilege log to support its claim of protection and to provide a means to assess the claim. Rule 37(d) of the Superior Court Rules of Civil Procedure provides that if a party withholding material fails to adequately

state the reasons for an objection, he or she may be held to have waived the objections, including those based on privilege. However, courts assessing the adequacy of a privilege log "should avoid hair-trigger findings of waiver." 8B Charles A. Wright, et al., Federal Practice and Procedure, § 2213 at 185 (3d ed. 2010). Minor procedural violations, good-faith attempts at compliance, and other such mitigating circumstances militate against finding waiver.

Further, a party is required to provide a privilege log detailing the documents, communications, or things not produced that are "otherwise discoverable." A document is not otherwise discoverable if it is irrelevant, immaterial, overbroad, or never requested in the document request. Indeed, Rule 34 of the Superior Court Rules of Civil Procedure provides that a recipient of a request for discovery is under a duty to provide only the documents or information that are responsive to the request and that are within its possession, custody, or control. See 1 Robert B. Kent et al., Rhode Island Civil and Appellate Procedure § 34:6 (West 2004 & 2011 supp.). Accordingly, nonresponsive documents are not required to be reported in a privilege log.

Here, in the state's request for production of documents, it asked for "[p]roduc[tion of] any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment" and "all minutes of meetings of the [b]oard of [d]irectors or other corporate entity of the [d]efendant concerning, relating to, or referencing the health effects of exposure to, inhalation of, or ingestion of [l]ead."[12] The state also propounded interrogatories on Sherwin-Williams, asking it the following:

---

[12] Although the requests by the state for production of documents and interrogatories took place in 2001—approximately three years before the October 2004 board of directors' meeting where exhibit no. 16 was presented—Sherwin-Williams would have had a continuing duty to produce

"Do you have one or more policies of liability insurance that afford you coverage for the claims that are the subject of this action? If so, please state as to each policy:

"a. the name of the insurer;
"b. the type of policy (including whether it is a primary or excess policy);
"c. the number of the policy and the named insured(s);
"d. the limits of the policy;
"e. the effective dates of the policy."

Sherwin-Williams explained that it interpreted these requests, in good faith, to be for the production of the actual insurance policies and not the information contained in exhibit no. 16 regarding reimbursement and potential insurance coverage. Accordingly, Sherwin-Williams responded by producing copies of responsive insurance policies, "[s]ubject to and without waiving any of its objections."

After reviewing the record, we agree with Sherwin-Williams that the state never requested information or documents that fit the description of the content contained in exhibit no. 16. Although the state requested policy identification numbers and limits of coverage, it did not request specific information regarding reimbursed costs or the insurance that was potentially available. Even though the existence and contents of an insurance agreement are discoverable pursuant to Rule 26(b)(2),[13] we hold that it was reasonable for Sherwin-Williams to interpret that

exhibit no. 16 if the state requested such information. Indeed, Rule 33(c) of the Superior Court Rules of Civil Procedure provides,
"[i]f the party furnishing answers to interrogatories subsequently shall obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 30 days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct."

[13] Rule 26(b)(2) of the Superior Court Rules of Civil Procedure provides, in pertinent part, that
"[a] party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an

- 22 -

the interrogatory and document requests were limited to the actual insurance policies and did not encompass the information contained in exhibit no. 16. Contrary to the state's assertion, even if exhibit no. 16 was directly related to the amount of insurance carried by Sherwin-Williams, the information contained in it was not responsive to the state's particular discovery requests.

The state further argues, however, that it specifically requested PowerPoint presentations to be produced before or at the depositions of four different individuals in 2005. Sherwin-Williams contends that, in good faith, it interpreted the request to be limited to documents that the four deponents had in their possession and that were responsive to their anticipated testimony.

After reviewing the discovery requests, we hold that Sherwin-Williams reasonably interpreted the discovery requests to be those documents in the deponents' custody and control. The state requested that each witness produce before or at his deposition any documents in his possession, custody, or control responsive to requests for documents appended to each notice of deposition. The specific request at issue included "[a]ll documents in your possession, custody or control concerning or relating to lead, lead paint, lead pigment, lead poisoning and/or human exposure to lead from any source that he has not previously produced in this lawsuit" for all four deponents, and "[a]ll unpublished papers, studies, articles, presentations, slides, speeches[,] or other materials authored or prepared by [the deponent] * * * related to [l]ead" for only two of those deponents. However, because the four deponents were not present at the October 2004 board of directors' meeting, and also because the four deponents did not have physical possession or a legal right to obtain copies of exhibit no. 16, Sherwin-Williams was not required

insurance business may be liable to satisfy part or all of a judgment
which may be entered in the action or to indemnify or reimburse
for payments made to satisfy the judgment."

to produce the PowerPoint presentation from October 2004. See Rule 34(a) (requiring a party to produce any designated documents that are within its "possession, custody or control" and that are relevant to the subject of the litigation); see also 1 Kent, § 34:2 (A party's legal right to obtain a copy determines whether a document is considered to be in his or her possession, custody, or control.). Accordingly, the document requests made by the state did not require the production of exhibit no. 16, and, therefore, Sherwin-Williams was not required to include it on its privilege log.

Further, we note that Sherwin-Williams' outside counsel did make an effort to provide documents that they believed, in good faith, were responsive to the discovery requests and not privileged or protected. Sherwin-Williams also objected to the document requests that they believed were overly broad as well as requests for documents that they believed were protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege. Sherwin-Williams even enclosed a third supplement to its master privilege log, which was thorough and already hundreds of pages in length.[14] See Rule 26(f) (every counsel is charged with conducting discovery in good faith).

The state argues, however, that other Sherwin-Williams' employees and its attorneys were aware of the existence of exhibit no. 16, yet the company failed to produce it. Among these employees was Cheryl Rampelt, a Sherwin-Williams employee who searched for documents that were potentially responsive to requests in the lead litigation. However, the deposition of Rampelt took place on October 7, 1997—approximately seven years before the October 2004 board of directors' meeting. Her testimony about document collection from 1997 reveals

---

[14] The state conceded that Sherwin-Williams provided a lengthy and thorough privilege log that "was hundreds of pages" in length and "was actually one of the more complete logs that we received in terms of information."

nothing about the relevance, handling, or treatment of documents that were not created until seven years later. Contrary to the state's assertion, this testimony does not support a conclusion that Sherwin-Williams was aware of exhibit no. 16 and consciously failed to produce it or include it on the privilege log. In any event, as discussed above, Sherwin-Williams was not required to produce exhibit no. 16 or to include it on the privilege log because the information contained therein was not responsive to the state's discovery requests.

Accordingly, after reviewing the state's discovery requests and responses, as well as taking into consideration Sherwin-Williams' continuing efforts throughout the litigation to maintain a thorough privilege log, we hold that it would unfairly penalize Sherwin-Williams in this case to conclude that its work product was waived simply because Sherwin-Williams, in good faith, did not include exhibit no. 16 on its privilege log. Accordingly, Sherwin-Williams' failure to include exhibit no. 16 on its privilege log did not waive the work-product protection.

### III
### Attorney-Client Privilege

Because we hold that the slides were protected under the work-product doctrine and that this doctrine was not waived, we do not reach the claim of attorney-client privilege. See Henderson, 966 A.2d at 1249 ("Because we conclude that the * * * report is shielded from discovery based on the work-product privilege, we need not reach the defendant's alternative argument that the report is protected by the attorney-client privilege.").

**Conclusion**

For the reasons set forth in this opinion, we vacate the order of the Superior Court denying Sherwin-Williams' motion for a protective order. We remand this case to the Superior Court with directions to enter an appropriate protective order that is not inconsistent with this opinion.

Justice Robinson did not participate.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State of Rhode Island v. Lead Industries Association, Inc.

**CASE NO:**    No. 2010-288-Appeal.
(PC 99-5226)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  May 10, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Robert J. McConnell, Esq.

For Defendant The Sherwin-Williams Company:
Joseph V. Cavanagh, Jr., Esq.